WILL, U. S. DISTRICT JUDGE *v.* UNITED STATES.

No. 36.   Argued October 17–18, 1967.—Decided November 13, 1967.

*Harvey M. Silets* argued the cause and filed briefs for petitioner.

*Richard A. Posner* argued the cause for the United States. With him on the brief were *Acting Solicitor General Spritzer, Assistant Attorney General Rogovin* and *Joseph M. Howard.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The question in this case is the propriety of a writ of mandamus issued by the Court of Appeals for the Seventh Circuit to compel the petitioner, a United States District Judge, to vacate a portion of a pretrial order in a criminal case.

Simmie Horwitz, the defendant in a criminal tax evasion case pending before petitioner in the Northern District of Illinois, filed a motion for a bill of particulars, which contained thirty requests for information. The Government resisted a number of the requests, and over the course of several hearings most of these objections

were either withdrawn by the Government or satisfied by an appropriate narrowing of the scope of the bill of particulars by petitioner. Ultimately the dispute centered solely on defendant's request number 25. This request sought certain information concerning any oral statements of the defendant relied upon by the Government to support the charge in the indictment. It asked the names and addresses of the persons to whom such statements were made, the times and places at which they were made, whether the witnesses to the statements were government agents and whether any transcripts or memoranda of the statements had been prepared by the witnesses and given to the Government.[1] After considerable discussion with counsel for both sides, petitioner ordered the Government to furnish the information. The United States Attorney declined to comply with the order on the grounds that request number 25 constituted a de-

---

[1] Request number 25 originally read:

"25. If [the Government relies upon any oral statements of the defendant], state with respect to each such statement, if there was more than one:

"a. The name and address of the person to whom the statement was made;

"b. The date on which the statement was made;

"c. The place where it was made;

"d. The substance of the statement;

"e. Whether the person to whom the statement was made was a Government Agent at the time of the statement;

"f. The names and addresses of any other persons present at the time the statement was made; and

"g. Whether a written memorandum or verbatim transcript of the oral statement was made, and, if. so, whether the Government has possession of the memorandum or transcript."

The Government objected, *inter alia,* to compliance with part "d" on work-product grounds. At first petitioner sustained this objection and struck part "d" altogether; however, he later ordered the Government to reveal the substance of statements made to government agents, but not of those made to private parties.

mand for a list of prosecution witnesses and that petitioner had no power under Rule 7 (f) of the Federal Rules of Criminal Procedure to require the Government to produce such a list.

Petitioner indicated his intention to dismiss the indictments against Horwitz because of the Government's refusal to comply with his order for a bill of particulars. Before the order of dismissal was entered, however, the Government sought and obtained *ex parte* from the Seventh Circuit a stay of all proceedings in the case. The Court of Appeals also granted the Government leave to file a petition for a writ of mandamus and issued a rule to show cause why such a writ should not issue to compel petitioner to strike request number 25 from his bill of particulars order. This case was submitted on the briefs, and the Court of Appeals at first denied the writ.[2] The

---

[2] The order of the Court of Appeals denying the writ read, in its entirety:

"This is a petition by the government for writ of mandamus to compel respondent, a district court judge, to vacate his order which effectually directs the government in a criminal cause to give the defendant names and addresses of persons to whom defendant in said cause made oral statements to support the charges in the indictments. Briefs have been filed in this court by both parties. The court has considered the briefs and is fully informed of the points made and the positions of the parties with respect to the issue, and

"The court finds that the order subject of the petition is not an appealable order, and a review of it would offend the policy against piecemeal appeals in criminal cases, *Cobbledick* v. *United States,* 309 U. S. 323; that mandamus may not be used as a means of reviewing the non-appealable order, *Roche* v. *Evaporated Milk Association,* 319 U. S. 21; that federal courts use mandamus for the traditional purpose of confining a district court to a lawful exercise of its jurisdiction or to compel it to exercise its proper jurisdiction, *Roche* v. *Evaporated Milk Association;* that the district judge's order upon the government to furnish names and addresses of witnesses to a defendant may be erroneous, a question we do not decide, but the ruling itself was within the court's jurisdiction, *Roche* v. *Evaporated Milk Association;* that the ruling can be reviewed on

94

Government petitioned for reconsideration, however, and
the Court of Appeals, without taking new briefs or hear-
ing oral argument, reversed itself and without opinion
issued a writ of mandamus directing petitioner "to vacate
his order directing the Government to answer question 25
in defendant's motion for bill of particulars." [3]  We

appeal from a final judgment; and that there is no question here that
the district judge refused to exercise his proper jurisdiction.

"It Is Therefore Ordered that the petition for writ of mandamus
be and it is hereby denied."

[3] The original order denying the writ was entered on July 12,
1966. On August 16, 1966, the court granted the Government's
petition for reconsideration, remarking only that:

"The court finds that in the circumstances of this particular case
the court should consider the merits of the ruling of the district court
challenged by the government, rather than to remit the govern-
ment to a radical alternative appealable judgment available to the
trial judge upon the government's persistent refusal to comply;

"It is therefore ordered that the order of this court of July 12,
1966, be and it is hereby vacated, and the cause is taken by the
court upon the petition for the writ, the briefs of both parties and
the record."

Subsequently, on October 4, 1966, the Court of Appeals granted
the writ. Its entire order reads as follows:

"This cause came on to be heard upon the Government's petition
for writ of mandamus ordering respondent to vacate his order
directing the Government to answer question 25 in defendant's
motion for bill of particulars, which question sought, among other
things, the names and addresses of persons to whom defendant made
oral statements supporting the indictment charging wilful evasion
of income tax, and which statements the Government would rely
upon at the trial; upon the rule issued upon respondent to show
cause why the writ should not issue; upon the brief of respondent
answering the rule, and the brief of the Government; and upon the
record.

"And the Court having on August 16, 1966 vacated its July 12,
1966 order denying the writ, and having reconsidered the question,

"It Is Ordered that a writ of mandamus issue as prayed in the
Government's petition directing respondent to vacate his order
directing the Government to answer question 25 in defendant's
motion for bill of particulars."

granted certiorari, 386 U. S. 955 (1967), because of the wide implications of the decision below for the orderly administration of criminal justice in the federal courts. We vacate the writ and remand the case to the Court of Appeals for further proceedings.

Both parties have devoted substantial argument in this Court to the propriety of petitioner's order. In our view of the case, however, it is unnecessary to reach this question.[4] The peremptory writ of mandamus has traditionally been used in the federal courts only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche* v. *Evaporated Milk Assn.*, 319 U. S. 21, 26 (1943). While the courts have never confined themselves to an arbitrary and technical definition of "jurisdiction," it is clear that only exceptional circumstances amounting to a judicial "usurpation of power" will justify the invocation of this extraordinary remedy. *De Beers Consol. Mines, Ltd.* v. *United States,* 325 U. S. 212, 217 (1945). Thus the writ has been invoked where unwarranted judicial action threatened "to embarrass the executive arm of the Government in conducting foreign relations," *Ex parte Peru,* 318 U. S. 578, 588 (1943), where it was the only means of forestalling intrusion by the federal judiciary on a delicate area of federal-state relations, *Maryland* v. *Soper,* 270 U. S. 9 (1926), where it was necessary to confine a lower court

---

[4] It is likewise unnecessary for us to reach the question whether the writ in the circumstances of this case may be said to issue in aid of an exercise of the Court of Appeals' appellate jurisdiction. See 28 U. S. C. § 1651; *Roche* v. *Evaporated Milk Assn.*, 319 U. S. 21, 25 (1943). Compare *In re United States,* 348 F. 2d 624 (C. A. 1st Cir. 1965), with *United States* v. *Bondy,* 171 F. 2d 642 (C. A. 2d Cir. 1948). In our view, even assuming that the possible future appeal in this case would support the Court of Appeals' mandamus jurisdiction, it was an abuse of discretion for the court to act as it did in the circumstances of this case.

to the terms of an appellate tribunal's mandate, *United States* v. *United States Dist. Court*, 334 U. S. 258 (1948), and where a district judge displayed a persistent disregard of the Rules of Civil Procedure promulgated by this Court, *La Buy* v. *Howes Leather Co.*, 352 U. S. 249 (1957); see *McCullough* v. *Cosgrave*, 309 U. S. 634 (1940); *Los Angeles Brush Mfg. Corp.* v. *James*, 272 U. S. 701, 706, 707 (1927) (dictum). And the party seeking mandamus has "the burden of showing that its right to issuance of the writ is 'clear and indisputable.'" *Bankers Life & Cas. Co.* v. *Holland*, 346 U. S. 379, 384 (1953); see *United States* v. *Duell*, 172 U. S. 576, 582 (1899).

We also approach this case with an awareness of additional considerations which flow from the fact that the underlying proceeding is a criminal prosecution. All our jurisprudence is strongly colored by the notion that appellate review should be postponed, except in certain narrowly defined circumstances, until after final judgment has been rendered by the trial court. See, *e. g.*, Judiciary Act of 1789, §§ 21, 22, 25, 1 Stat. 73, 83, 84, 85; *Cobbledick* v. *United States*, 309 U. S. 323, 326 (1940); *McLish* v. *Roff*, 141 U. S. 661 (1891). This general policy against piecemeal appeals takes on added weight in criminal cases, where the defendant is entitled to a speedy resolution of the charges against him. *DiBella* v. *United States*, 369 U. S. 121, 126 (1962). Moreover, "in the federal jurisprudence, at least, appeals by the Government in criminal cases are something unusual, exceptional, not favored," *Carroll* v. *United States*, 354 U. S. 394, 400 (1957), at least in part because they always threaten to offend the policies behind the double-jeopardy prohibition, cf. *Fong Foo* v. *United States*, 369 U. S. 141 (1962). Government appeal in the federal courts has thus been limited by Congress to narrow categories of orders terminating the prosecution, see 18 U. S. C. § 3731, and the Criminal Appeals Act is strictly

construed against the Government's right of appeal, *Carroll* v. *United States,* 354 U. S. 394, 399–400 (1957). Mandamus, of course, may never be employed as a substitute for appeal in derogation of these clear policies. *E. g., Fong Foo* v. *United States,* 369 U. S. 141 (1962); *Parr* v. *United States,* 351 U. S. 513, 520–521 (1956); *Bank of Columbia* v. *Sweeny,* 1 Pet. 567, 569 (1828). Nor is the case against permitting the writ to be used as a substitute for interlocutory appeal "made less compelling . . . by the fact that the Government has no later right to appeal." *DiBella* v. *United States,* 369 U. S. 121, 130 (1962).[5] This is not to say that mandamus may never be used to review procedural orders in criminal cases. It has been invoked successfully where the action of the trial court totally deprived the Government of its right to initiate a prosecution, *Ex parte United States,* 287 U. S. 241 (1932), and where the court overreached its judicial power to deny the Government the rightful

---

[5] Thus it is irrelevant, and we do not decide, whether the Government could appeal in the event petitioner dismissed the Horwitz indictments because of its refusal to comply with his bill of particulars order. Both parties agree that it is highly doubtful that it could appeal. See *United States* v. *Apex Distrib. Co.,* 270 F. 2d 747 (C. A. 9th Cir. 1959). The Government argues that it is unseemly to force it to defy the court in order to seek review of its order, and doubly so because it may secure review with certainty only if the United States Attorney is cited for contempt, compare *Bowman Dairy Co.* v. *United States,* 341 U. S. 214 (1951), in view of the doubtful status of its right to appeal a dismissal. But this misses the mark. Congress clearly contemplated when it placed drastic limits upon the Government's right of review in criminal cases that it would be completely unable to secure review of some orders having a substantial effect on its ability to secure criminal convictions. This Court cannot and will not grant the Government a right of review which Congress has chosen to withhold. *Carroll* v. *United States,* 354 U. S. 394, 407–408 (1957). We may assume for purposes of this decision that there may be no other way for the Government to seek review of individual orders directing it to file bills of particulars.

fruits of a valid conviction, *Ex parte United States*, 242 U. S. 27 (1916). But this Court has never approved the use of the writ to review an interlocutory procedural order in a criminal case which did not have the effect of a dismissal. We need not decide under what circumstances, if any, such a use of mandamus would be appropriate. It is enough to note that we approach the decision in this case with an awareness of the constitutional precepts that a man is entitled to a speedy trial and that he may not be placed twice in jeopardy for the same offense.

In light of these considerations and criteria, neither the record before us nor the cryptic order of the Court of Appeals justifies the invocation of the extraordinary writ in this case.

We do not understand the Government to argue that petitioner was in any sense without "jurisdiction" to order it to file a bill of particulars.[6] Suffice it to note that Rule 7 (f) of the Federal Rules of Criminal Procedure specifically empowers the trial court to "direct the filing of a bill of particulars,"[7] and that federal trial

---

[6] Nor do we understand the Government to argue that a judge has no "power" to enter an erroneous order. Acceptance of this semantic fallacy would undermine the settled limitations upon the power of an appellate court to review interlocutory orders. Neither "jurisdiction" nor "power" can be said to "run the gauntlet of reversible errors." *Bankers Life & Cas. Co.* v. *Holland*, 346 U. S. 379, 382 (1953). Courts faced with petitions for the peremptory writs must be careful lest they suffer themselves to be misled by labels such as "abuse of discretion" and "want of power" into interlocutory review of nonappealable orders on the mere ground that they may be erroneous. "Certainly Congress knew that some interlocutory orders might be erroneous when it chose to make them nonreviewable." *De Beers Consol. Mines, Ltd.* v. *United States*, 325 U. S. 212, 223, 225 (1945) (dissenting opinion of MR. JUSTICE DOUGLAS).

[7] It should be noted that Rule 7 (f) was amended, effective July 1, 1966, to eliminate the requirement that a defendant seeking a bill

courts have always had very broad discretion in ruling upon requests for such bills, compare *Wong Tai* v. *United States,* 273 U. S. 77, 82 (1927). Furthermore, it is not uncommon for the Government to be required to disclose the names of some potential witnesses in a bill of particulars, where this information is necessary or useful in the defendant's preparation for trial. See, *e. g., United States* v. *White,* 370 F. 2d 559 (C. A. 7th Cir. 1966). See also *United States* v. *Debrow,* 346 U. S. 374, 378 (1953).

The Government seeks instead to justify the employment of the writ in this instance on the ground that petitioner's conduct displays a "pattern of manifest noncompliance with the rules governing federal criminal trials." [8] It argues that the federal rules place settled limitations upon pretrial discovery in criminal cases, and that a trial court may not, in the absence of compelling justification, order the Government to produce a list of its witnesses in advance of trial. It argues further that in only one category of cases, *i. e.,* prosecutions for treason and other capital offenses, is the Government required to turn over to the defense such a list of its witnesses. A general policy of requiring such disclosure without a particularized showing of need would, it is contended, offend the informant's privilege. Petitioner, according to the Government, adopted "a uniform rule in his courtroom requiring the government in a criminal case to furnish the defense, on motion for a bill of particulars, a list of potential witnesses." [9] The Government concludes

of particulars make a showing of "cause." The Government argues that this amendment was not designed "to transform the bill of particulars into an instrument of broad discovery." Brief for United States, p. 15, n. 5. We intimate no view regarding the construction of the amendment. Petitioner's order was entered before the amendment was promulgated. The impact of the amendment on the present proceeding will, of course, be a question open upon remand.

[8] Brief for United States, p. 24.

[9] Brief for United States, p. 11.

that since petitioner obviously had no power to adopt such a rule, mandamus will lie under this Court's decision in *La Buy* v. *Howes Leather Co.*, 352 U. S. 249 (1957), to correct this studied disregard of the limitations placed upon the district courts by the federal rules.[10]

The action of the Court of Appeals cannot, on the record before us, bear the weight of this justification. There is absolutely no foundation in this record for the Government's assertions concerning petitioner's practice. The legal proposition that mandamus will lie in appropriate cases to correct willful disobedience of the rules laid down by this Court is not controverted. But the position of the Government rests on two central factual premises: (1) that petitioner in effect ordered it to produce a list of witnesses in advance of trial; and (2) that petitioner took this action pursuant to a deliberately adopted policy in disregard of the rules of criminal procedure. Neither of these premises finds support in the record.

Petitioner repeatedly and, we think, correctly emphasized that request number 25 did not call for a list of government witnesses. He carefully noted that it was utterly immaterial under the terms of request number 25 whether the Government planned to call any of the individuals whose names were sought to the witness stand during the trial. Furthermore, it is clear as a practical

---

[10] We note in passing that *La Buy* and the other decisions of this Court approving the use of mandamus as a means of policing compliance with the procedural rules were civil cases. See *Schlagenhauf* v. *Holder*, 379 U. S. 104 (1964); *McCullough* v. *Cosgrave*, 309 U. S. 634 (1940); *Los Angeles Brush Mfg. Corp.* v. *James*, 272 U. S. 701, 706, 707 (1927) (dictum). We have pointed out that the fact this case involves a criminal prosecution has contextual relevance. See *supra*, at 96–98. In view of our reading of the record, however, we need not venture an abstract pronouncement on the question whether this fact imposes a more stringent standard for the invocation of mandamus by the Government where the allegation is that a district judge has deviated from the federal rules.

matter that the Government's proof in this case, as in any prosecution of this complex nature, will extend far beyond mere damaging admissions of the defendant, and that witnesses will in all probability be called who have never heard Horwitz make any incriminating statements. Nor, if the list of people who have allegedly heard Horwitz make damaging admissions is long, is it likely that they will all be called to testify for the Government. Thus while the two categories have a clear probable overlap, they are not co-extensive. And, as petitioner stated in the opinion accompanying his original order to the Government to file a bill of particulars:

> "The reason for requiring disclosure of their names . . . is not that they will or may be witnesses, but that the defendant requires identification of the times, places and persons present in order to prepare his defense."

Indeed, petitioner excused the Government from answering request number 29 (a), which was so broad as to constitute in effect a demand for a list of prosecution witnesses. Finally, it should be noted that in the opinion accompanying the original order, petitioner averred his willingness to narrow the order of disclosure upon a showing by the Government "that such disclosure will involve physical risk to the individuals or prejudice the government in its ability to produce its evidence." He repeated this offer numerous times in the subsequent hearings on the Government's objections to the bill, but the United States Attorney never suggested that such a showing could be made in this case.[11]

---

[11] Petitioner at one point stated to government counsel:

"I told you that any time you made a representation with any foundation in support of it that the disclosure of the name of an individual would either jeopardize him physically or jeopardize the government's proof in the case and that his testimony might be altered or effort might be made to persuade him not to testify, or something else, I am prepared to say under those circumstances

The record is equally devoid of support for the notion that petitioner had adopted a deliberate policy in open defiance of the federal rules in matters of pretrial criminal discovery. The extended colloquy between petitioner and government counsel reveals at most that petitioner took a generally liberal view of the discovery rights of criminal defendants.[12] But petitioner was careful never

of that showing we don't risk people's lives or their security, their physical well-being, and we don't encourage any possible circumstances in which testimony can be suppressed. That is consistent, it seems to me, with my general philosophy that you shouldn't be suppressing things; and if there is a threat of suppression then I will take the lesser suppression to prevent the greater."

Earlier, after government counsel suggested that the danger of fabricated defenses justified a policy against the disclosure of the names of potential government witnesses, petitioner replied:

"Now any evidence of a fabrication, believe me, we will deal with it. The laws of perjury—we have had convictions for perjury here, and we will have them again, I have no doubt, arising out of criminal cases, but I am not prepared to say to a defendant that you may not have the information which it seems to me you reasonably require to prepare your defense because I am afraid you or somebody helping you will lie and we won't be able to do anything about it."

Upon further inquiry, the United States Attorney made no suggestion that there was a particular danger that disclosure of the names sought by request number 25 would result in subornation of perjury.

[12] Petitioner remarked at one stage:

"You know, I have great concern that in a civil case we require both sides to submit their witnesses to maximum deposition when all that is involved is money. In a criminal case, the government doesn't even want to disclose the name of a person so the other side can go out and interview him when what is concerned is life or liberty. To me this is a very strange aberration of the processes of justice as between civil and criminal cases. When all that is involved is money, we say put your cards on the table. Where life and liberty are involved, we say to the prosecution you don't have to tell him a thing."

The Government seeks to make much of an exchange in which petitioner remarked that he would "go further" than what the

to divorce his ruling from his view of the legitimate needs of the defendant in the case before him, and there is no indication that he considered the case to be governed by a uniform and inflexible rule of disclosure.[13]   Thus the

United States Attorney referred to as "the proposed new rules of discovery under the criminal rules by the American Bar Association." The reference, according to the Government, is to the amendments to the Federal Rules of Criminal Procedure, which were pending in this Court at the time, and the exchange reveals petitioner's determination to require broad criminal discovery despite the limitations of the rules. We cannot accept this argument. In the first place, the colloquy clearly reveals that petitioner considered the proposed rules irrelevant to the question before him. In the second place, petitioner made it plain that he thought his position could in any event be rested on a reading of the proposed rules:

"The Court: . . . I would go further than they go, but they certainly go a lot further than you—a lot further.

"Mr. Schultz [United States Attorney]: They would not require the answers to these questions.

"The Court: I don't agree with that. They would not require the giving of a list of witnesses, and I don't conceive that I am . . . ."

[13] After his initial ruling that the defendant was entitled to the information sought by request number 25 because he needed it to prepare his defense adequately, petitioner continually asserted a willingness to consider any factors peculiar to the case which militated against disclosure of this information and to narrow his order in light of any such considerations. See n. 11, *supra*. Moreover, on several occasions it was petitioner who sought to narrow the focus of the discussion to the particular instance by insisting that the United States Attorney relate his generalized policy objections to the facts of the particular case:

"Mr. Schultz: We are not only talking about this very case, your Honor.

"The Court: Well, I am talking about this case. That is what I am ruling on. That is what I ruled on last week or earlier this week. That is what you are asking me to reconsider, to vacate."

And again:

"Why shouldn't they have an opportunity to interview the witnesses? Why should they put them on cold at the time, or why

most that can be claimed on this record is that petitioner may have erred in ruling on matters within his jurisdiction. See *Parr* v. *United States,* 351 U. S. 513, 520 (1956). But "[t]he extraordinary writs do not reach to such cases; they may not be used to thwart the congressional policy against piecemeal appeals." *Id.,* at 520–521. Mandamus, it must be remembered, does not "run the gauntlet of reversible errors." *Bankers Life & Cas. Co.* v. *Holland,* 346 U. S. 379, 382 (1953). Its office is not to "control the decision of the trial court," but rather merely to confine the lower court to the sphere of its discretionary power. *Id.,* at 383. Thus the record before us simply fails to demonstrate the necessity for the drastic remedy employed by the Court of Appeals.

Even more important in our view, however, than these deficiencies in the record is the failure of the Court of Appeals to attempt to supply any reasoned justification of its action. Had the Government in fact shown that petitioner adopted a policy in deliberate disregard of the criminal discovery rules and that this policy had proved seriously disruptive of the efficient administration of criminal justice in the Northern District of Illinois, it would have raised serious questions under this Court's decision in *La Buy* v. *Howes Leather Co.,* 352 U. S. 249 (1957).[14] In *La Buy,* however, we specifically relied upon

should I have to recess then while they go and interview the witnesses to see what their testimony would be?

"I don't understand it, Mr. Schultz. I just don't understand in this situation—I can understand a lot of situations, but in this situation. We are not talking about some other case, but in this case, this case in which you say that there were incriminating admissions made."

[14] The Government also places reliance on *Schlagenhauf* v. *Holder,* 379 U. S. 104 (1964), arguing that it "reaffirmed" *La Buy.* Insofar as it did so, the case does not help the Government here, since we have no quarrel with *La Buy,* which is simply inapposite where there is no showing of a persistent disregard of the federal rules. And it

evidence in the record which showed a pattern of improper references of cases to special masters by the District Judge. 352 U. S., at 258. There is no evidence in this record concerning petitioner's practice in other cases, aside from his own remark that the Government was generally dissatisfied with it,[15] and his statements do not reveal any intent to evade or disregard the rules. We do not know what he ordered the Government to reveal under what circumstances in other cases. This state of the record renders the silence of the Court of Appeals all the more critical. We recognized in *La Buy* that the familiarity of a court of appeals with the practice of the individual district courts within its circuit was relevant to an assessment of the need for mandamus as a corrective measure. See 352 U. S., at 258. But without an

cannot be contended that *Schlagenhauf* on its facts supports an invocation of mandamus in this case. The Court there did note that the various questions concerning the construction of Rule 35 were new and substantial, but it rested the existence of mandamus jurisdiction squarely on the fact that there was real doubt whether the District Court had any power at all to order a defendant to submit to a physical examination.

[15] Petitioner stated that

"it is no secret that the government is disturbed that I am making available to defendants the identity of people who are alleged to have been present when transactions took place, which the government contends are illegal. . . .

". . . I have never required them to disclose their evidence, but I have required them to identify the people with whom the defendant is supposed to have participated in an illegal act but who were present."

We note merely that petitioner was careful to distinguish his practice from requiring the Government to produce its evidence or a list of witnesses. In any event, petitioner's passing remarks concerning a running dispute with the Government are insufficient to support an invocation of *La Buy*, absent some evidence concerning petitioner's actions in other cases, or at the very least some illumination of this dialogue flowing from the Court of Appeals' experience with petitioner's general practice and its reading of Rule 7 (f).

opinion from the Court of Appeals we do not know what role, if any, this factor played in the decision below. In fact, we are in the dark with respect to the position of the Court of Appeals on all the issues crucial to an informed exercise of our power of review. We do not know: (1) what the Court of Appeals found petitioner to have done; (2) what it objected to in petitioner's course of conduct—whether it was the order in this particular case or some general practice adopted by petitioner in this and other cases; [16] (3) what it thought was the proper scope of a bill of particulars under Rule 7 (f) and what limitations it thought the criminal rules placed upon the particular or generalized discretion of a district court to order the Government to file such a bill; or (4) what relevance, if any, it attached to the fact that this order was entered in a criminal case, in assessing the availability of mandamus. We cannot properly identify the questions for decision in the case before us without illumination of this unclear record by the measured and exposed reflection of the Court of Appeals.

Due regard, not merely for the reviewing functions of this Court, but for the "drastic and extraordinary" nature of the mandamus remedy, *Ex parte Fahey,* 332 U. S.

---

[16] Another puzzling aspect of the action of the Court of Appeals is what it did not do. Requests 7, 14, 19, 21, 23, 25, 27, and 29 called for the disclosure of the names of persons who might conceivably be called as witnesses by the Government at Horwitz' trial. The Government objected to being required to answer requests 7, 14, 25, and 29. Ultimately petitioner excused the Government from answering request number 29, which was very broadly cast and did in effect call for a list of all potential witnesses. The Government for its part answered all the remaining requests, except number 25. The mandamus petition only placed the latter in issue, but nothing in the record indicates why either the Government or the Court of Appeals might have thought that it was within petitioner's judicial discretion under Rule 7 (f) to order the disclosure of the names sought by the other requests, but not the revelation of those sought by request number 25.

258, 259 (1947), and for the extremely awkward position in which it places the District Judge, *id.*, at 260, demands that a court issuing the writ give a reasoned exposition of the basis for its action.

Mandamus is not a punitive remedy. The entire thrust of the Government's justification for mandamus in this case, moreover, is that the writ serves a vital corrective and didactic function. While these aims lay at the core of this Court's decisions in *La Buy* and *Schlagenhauf* v. *Holder*, 379 U. S. 104 (1964), we fail to see how they can be served here without findings of fact by the issuing court and some statement of the court's legal reasoning. A mandamus from the blue without rationale is tantamount to an abdication of the very expository and supervisory functions of an appellate court upon which the Government rests its attempt to justify the action below.

The peremptory common-law writs are among the most potent weapons in the judicial arsenal. "As extraordinary remedies, they are reserved for really extraordinary causes." *Ex parte Fahey*, 332 U. S. 258, 260 (1947). There is nothing in the record here to demonstrate that this case falls into that category, and thus the judgment below cannot stand. What might be the proper decision upon a more complete record, supplemented by the findings and conclusions of the Court of Appeals, we cannot and do not say. Hence the writ is vacated and the cause is remanded to the Court of Appeals for the Seventh Circuit for further proceedings not inconsistent with this opinion.

*It is so ordered.*

Mr. Justice Marshall took no part in the consideration or decision of this case.

Mr. Justice Black, concurring.

I concur in the Court's judgment to vacate and agree substantially with its opinion, but would like to add a

few words, which I do not understand to be in conflict with what the Court says, concerning the writ of mandamus. I agree that mandamus is an extraordinary remedy which should not be issued except in extraordinary circumstances. And I also realize that sometimes the granting of mandamus may bring about the review of a case as would an appeal. Yet this does not deprive a court of its power to issue the writ. Where there are extraordinary circumstances, mandamus may be used to review an interlocutory order which is by no means "final" and thus appealable under federal statutes. Finality, then, while relevant to the right of appeal, is not determinative of the question when to issue mandamus. Rather than hinging on this abstruse and infinitely uncertain term, the issuance of the writ of mandamus is proper where a court finds exceptional circumstances to support such an order. In the present case it is conceivable that there are valid reasons why the Government should not be forced to turn over the requested names and that compliance with the order would inflict irreparable damage on its conduct of the case. The trouble here, as I see it, is that neither of the courts below gave proper consideration to the possible existence of exceptional facts which might justify the Government's refusal to disclose the names. Having no doubt as to the appropriateness of mandamus, if the circumstances exist to justify it, I would vacate the judgment below and remand the case to the Court of Appeals for further deliberation on whether there are special circumstances calling for the issuance of mandamus.