No. 75–928. ESTELLE, CORRECTIONS DIRECTOR, ET AL. *v.* JUSTICE, U. S. DISTRICT JUDGE, ET AL. C. A. 5th Cir. Motion of respondent inmates for leave to proceed *in forma pauperis* granted. Certiorari denied.

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE and MR. JUSTICE POWELL join, dissenting.

The writ of mandamus is granted sparingly and is "reserved for really extraordinary causes," *Ex parte Fahey*, 332 U. S. 258, 260 (1947). It seems to me that

the course of this litigation in the United States District Court for the Eastern District of Texas makes it a "really extraordinary" case, and I would grant certiorari to review the decision of the Court of Appeals for the Fifth Circuit declining to issue the writ sought by petitioners.

Sometime prior to April 1974, David Ruiz and other inmates of the Texas Department of Corrections sued petitioner Estelle, Director of the Texas Department of Corrections, in the United States District Court for the Eastern District of Texas seeking declaratory and equitable relief from alleged deprivations of rights secured to the plaintiffs by the Constitution of the United States. Jurisdiction was based upon 28 U. S. C. § 1343 and 42 U. S. C. § 1983. On April 12, 1974, respondent the Honorable William Wayne Justice, a judge of the United States District Court for the Eastern District of Texas, ordered the *Ruiz* case consolidated with several other pending causes in the District which he found to involve common questions of law and fact, and proceeded, *sua sponte*, to enter the following additional order:

> "This Court having also determined that the public interest will be served by the participation of the United States of America in the consolidated civil action, it is
>
> "ORDERED that the United States of America make an appearance in the above-entitled and numbered consolidated civil action as *amicus curiae*, in order to investigate fully the facts alleged in the prisoners' complaints, to participate in such civil action with the full rights of a party thereto, and to advise this Court at all stages of the proceedings as to any action deemed appropriate by it."

Not surprisingly, the United States some months later filed a motion to intervene in the action, and to add parties defendant thereto. Despite the familiar rule that

an intervenor take the case as he finds it, respondent granted not only the motion of the United States to intervene, but also that seeking to add as parties defendant the Texas Board of Corrections, and the members of that Board as individuals. In addition, the complaint in intervention of the United States sought relief which went far beyond that sought by the inmates, requesting an order enjoining petitioners from the following:

"1. Failing or refusing to provide inmates with a medical care delivery system which is accessible and adequate to meet their medical needs;

"2. Failing or refusing to provide living and working conditions which do not jeopardize the health and safety of inmates;

"3. Failing or refusing to provide inmates reasonable protection from physical assault;

"4. Failing or refusing to permit inmates reasonable access to the Courts and to public officials for redress of grievances;

"5. Failing or refusing to supervise and control prison officials and employees sufficiently to prevent the systematic imposition of summary and other cruel and unusual punishment on inmates and the systematic denial of due process to inmates."

Petitioners opposed the unexpected entry of the United States into this litigation, as well as its attempt to expand the issues before the District Court. Respondent, however, refused their request to certify his orders for interlocutory appeal pursuant to 28 U. S. C. § 1292 (b). Petitioners thereupon brought the instant action pursuant to the All Writs Act, 28 U. S. C. § 1651 (a), contending that respondent had so exceeded his authority as to warrant issuance of a writ of mandamus. The Court of Appeals rejected petitioners' request for this relief in

opinions which indicated that the three members of the panel had divergent views on the issues before it.

While each of the three judges of the Court of Appeals had a somewhat different view as to why petitioners should not obtain the relief they requested, it seems fair to say that the lowest common denominator of these views was an assumption on the court's part that even if respondent's orders were wholly unauthorized by law, they could not be reviewed by a writ of mandamus. I think this assumption incorrect. And I believe that respondent's actions in this litigation raise issues of sufficient moment, regarding both the relationship between the Federal Judiciary and the Executive Branch of the Federal Government and that between the Federal Judiciary and the States, that the Court of Appeals' conclusion that mandamus should not issue warrants plenary review here.

The effect of the actions of respondent is to pit the United States, as a virtually involuntary coplaintiff, alongside the inmate plaintiffs and against petitioner correctional officials. I think it extremely doubtful there is any authority for those actions. Federal Rule Civ. Proc. 24 (b), upon which respondent relied, requires that a would-be intervenor have at a minimum some "claim" having "a question of law or fact in common" with the action sought to be joined. But the United States surely has no claim of its own under the Fourteenth Amendment which it may assert against petitioners, and the rather pallid brief of the United States in opposition to certiorari is discreetly silent as to the source of any such "claim." Title 42 U. S. C. § 2000h–2 (1970 ed., Supp. IV), which authorizes intervention by the Attorney General in an action seeking relief from the denial of equal protection of the laws "on account of race, color, religion, sex or national origin . . . ," clearly affords no basis for intervention by the Gov-

ernment on the pleadings before the District Court. The Solicitor General's brief also refers to the fact that the United States has statutory responsibility for enforcing 18 U. S. C. §§ 241 and 242, "the criminal counterpart to 42 U. S. C. § 1983," but it would seem unlikely that respondent or any other district judge could grant intervention for the reason that the proposed intervenor wished later to institute criminal proceedings against one of the parties to a civil action. In its memorandum in support of its motion to intervene in the District Court, the United States urged that it had "inherent standing to sue to enjoin widespread and severe deprivations of constitutional rights. *In re Debs,* 158 U. S. 564 (1895)." If *Debs,* which held that a federal court had authority to issue an injunction against an armed conspiracy that threatened the interstate transportation of the mails, is to be extended to the situation presented by this case, I think the decision to do so should be made by this Court.

In short, the legal assumptions on which the District Court acted involve serious and far-reaching questions which have certainly not been settled by any decision of this Court. And since the relief sought by the inmate plaintiffs in *Ruiz,* if awarded at all, will run to the individual prisoners, petitioners will be unable to assert any separate claim of error in an appeal from that judgment by reason of the respondent's orders allowing intervention by the United States. There is a substantial probability, therefore, that the issue here presented will escape review at any other time, and that mandamus is "the only means of forestalling [the] intrusion of the federal judiciary" complained of by petitioners. *Will* v. *United States,* 389 U. S. 90, 95 (1967); *Maryland* v. *Soper,* 270 U. S. 9 (1926). If there was no legal basis for the respondent to grant intervention on the part of the United States, use of the writ of mandamus in this case would come squarely within its "traditional use . . .

confin[ing] an inferior court to a lawful exercise of its prescribed jurisdiction" *Roche* v. *Evaporated Milk Assn.,* 319 U. S. 21, 26 (1943), for respondent's action would fall into the category of "usurpation of power" against which mandamus is classically available. *De Beers Mines, Ltd.* v. *United States,* 325 U. S. 212, 217 (1945).

Over and beyond these factors, which govern availability of mandamus in private litigation, this case raises issues involving the "delicate area of federal-state relations," *Will* v. *United States, supra,* at 95, in which mandamus must be more readily available in other civil litigations. *Ibid.; Maryland* v. *Soper, supra,* at 29. And, perhaps most importantly of all, the Court of Appeals indicated in its opinion, *In re Estelle,* 516 F. 2d 480, 487 n. 5 (1975), that intervention by the United States in situations similar to that presented here has been authorized by a number of District Courts in the Fifth Circuit. There is good reason to believe, therefore, that orders such as those entered by respondent in this case will be entered by other District Judges in that Circuit in the future. If this be an improper exercise of their authority, the prospect of its being repeated makes mandamus particularly appropriate. *La Buy* v. *Howes Leather Co.,* 352 U. S. 249 (1957).

I would grant the writ of certiorari.