**October 15, 1990**

CLERK OF COURT
SUPREME COURT, CNMI
FILED

90 OCT 15 A10: 03

BY:

## IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

COMMONWEALTH OF THE NORTHERN )    APPEALS NO. 90-033 & 90-034
MARIANA ISLANDS,              )            (CONSOLIDATED)
                     )
    Plaintiff/Appellee, )
                     )
   vs.                   )          <u>ORDER OF DISMISSAL</u>
                     )
ABRAHAM HASINTO and      )
PENO MAILO,           )
                     )
   Defendants/Appellants.)
_____)

Argued September 20, 1990

Counsel for Defendants/Appellants: Jeffrey D. Cohen
                                  Office of the Public Defender
                                  Commonwealth of the Northern
                                     Mariana Islands
                                  Saipan, MP  96950

Counsel for Plaintiff/Appellee:      James E. Hollman
                                  Office of the Attorney General
                                  Commonwealth of the Northern
                                     Mariana Islands
                                  Capitol Hill
                                  Saipan, MP  96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

DELA CRUZ, Chief Justice:

The Commonwealth of the Northern Mariana Islands ("government") has moved to dismiss the appeals taken by Abraham Hasinto and Peno Mailo ("defendants") from Superior Court orders denying their motions to suppress breathalyzer evidence in DUI

379

prosecutions.[1] The government contends that the orders appealed from are not final orders and are therefore not immediately appealable.

## I.

This Court's appellate jurisdiction over Superior Court proceedings is set forth in 1 CMC § 3102(a): "[t]he Supreme Court has appellate jurisdiction over judgments and orders of the Superior Court of the Commonwealth." Our construction of this language resolves the issue presented in this motion.

The government contends that an interlocutory order denying a motion to suppress evidence in a criminal proceeding cannot be appealed until the Superior Court issues a final judgment or order disposing of the case. It urges us to interpret the statutory phrase "judgments and orders" to mean _final_ judgments and orders.

The defendants note that the Commonwealth statute formerly governing appeals from the Commonwealth Trial Court (now Superior Court) provided, in part:

> The District Court for the Northern Mariana Islands shall have jurisdiction of all appeals from _final_ judgments, _final_ orders, and _final_ decrees in criminal cases and in civil cases and proceedings.

P.L. 1-5, ch. 3, § 1 (emphasis added). This provision was repealed and replaced with 1 CMC § 3102(a) upon the enactment of the Commonwealth Judicial Reorganization Act of 1989, P.L. 6-25 (codified at 1 CMC §§ 3101-3404; hereafter "P.L. 6-25"), which

---

[1]The defendants' appeals were consolidated because they raise the same issue concerning the admissibility of the evidence.

transferred appellate jurisdiction from the Appellate Division of the District Court for the Northern Mariana Islands (hereafter "Appellate Division") to this Court.

The defendants contend that the absence of the word "final" before the phrase "judgments and orders" in 1 CMC § 3102(a) indicates that the legislature intended to alter prior law and grant this Court broader appellate jurisdiction than that formerly exercised by the Appellate Division. Asserting that 1 CMC § 3102(a) is unambiguous and therefore not subject to judicial interpretation, they urge us to construe the statute to permit their appeals from the Superior Court's interlocutory orders.[2]

## II.

"The common law allowed an appeal only after a final decision, i.e., after the last of all possible decisions in the progress of an action." Nesbitt v. Bruce Eells & Associates, 233 P.2d 183, 184 (Cal.Dist.Ct.App. 1951). This longstanding principle, which has been codified in most jurisdictions, is based on practical considerations:

> The policy behind . . . the statutes, rules of court, and decisions embodying this principle is that litigation should not proceed piecemeal, that intermediate appeals would unduly delay the final disposition of litigation,

---

[2]The defendants, who do not contest the characterization of their appeals as interlocutory, raise two other arguments. First, noting that Com.R.App.Pro. 28(1)(2) requires appellate briefs to contain a statement of "[t]he basis for claiming that a judgment or order appealed from is final or otherwise appealable," they contend that the emphasized language refers to interlocutory orders. Second, the defendants request us to consider their appeals because of their importance in resolving an issue arising in numerous pending DUI prosecutions.

and that a complete disposition of the matter in the trial court may make an appeal moot.

4 C.J.S. Appeal and Error §92 (1957). The U.S. Supreme Court has enunciated the importance of this principle in a number of decisions concerning appeals of interlocutory orders in criminal proceedings. See, e.g., Di Bella v. United States, 369 U.S. 121, 124, 82 S.Ct. 654, 656, 7 L.Ed.2d 614 (1962) ("[t]his insistence on finality and prohibition of piecemeal review discourage[s] undue litigiousness and leaden-footed administration of justice, particularly damaging to the conduct of criminal cases"); Will v. United States, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967) ("[a]ll our jurisprudence is strongly colored by the notion that appellate review should be postponed, except in certain narrowly defined circumstances, until after final judgment has been rendered by the trial court. . . . [t]his general policy against piecemeal appeals takes on added weight in criminal cases, where the defendant is entitled to a speedy resolution of the charges against him").

Clearly, the word "final" was not included in 1 CMC § 3102(a) to limit the Superior Court "judgments and orders" that this Court may review. It is also true that the former statute governing appeals to the Appellate Division included the limiting term. We are mindful that "[a] basic principle of construction is that language must be given its plain meaning." Tudela v. MPLC, No. 90-011, slip op. at 5 (N.M.I. June 7, 1990); see also Camacho v. Northern Marianas Retirement Fund, No. 90-007 (N.M.I. Sept. 24, 1990). In addition, "[w]here the words of a later statute differ

from those of a previous one on the same or a related subject, the [legislature] must have intended them to have a different meaning." Muscogee (Creek) Nation v. Hodel, 851 F.2d 1439, 1444 (D.C.Cir. 1988).

▮ These principles of statutory construction do not necessarily require that we construe 1 CMC § 3102(a) to permit appeals from interlocutory orders. In this case, another rule of construction should be considered: "[a]bsent an indication that the legislature intends a statute to supplant common law, the courts should not give it that effect." N. Singer, Sutherland Stat. Const. § 50.01 (4th Ed., 1986); see also Devine v. White, 697 F.2d 421 (D.C.Cir. 1983); Atkins v. United States, 556 F.2d 1028 (Ct.Cl. 1977).[3]

▮ In the absence of a clear indication that the NMI legislature sought to supplant the common law concerning the appealability of interlocutory orders, we are not persuaded that it intended to do so.[4]

___

[3] It should also be noted that "[a]lthough a 'change of statutory language is some evidence of a change of purpose,' the inference of a change of intent is only 'a workable rule of construction, not an infallible guide to legislative intent . . ..'" McElroy v. United States, 455 U.S. 642, 650 n.14, 102 S.Ct. 1337 n.14, 71 L.Ed.2d 522 (1982) (citations omitted) (quoting Johnson v. United States, 225 U.S. 405, 415, 32 S.Ct. 748, 751, 56 L.Ed. 1142 (1912) and United States v. Dickerson, 310 U.S. 554, 561, 60 S.Ct. 1034, 1038, 84 L.Ed. 1356 (1940)).

[4] We note that there is no other provision in P.L. 6-25 that provides clear direction on this point. See Waikiki Resort Hotel, Inc. v. City and County of Honolulu, 624 P.2d 1353 (Haw. 1981) (statutory language must be read in the context of the entire statute and construed in a manner consistent with the purposes of the statute). If necessary, in construing legislation the courts may consult legislative history. Camacho, supra. There is likewise nothing within the recorded legislative history of P.L. 6-25 indicating that the legislature intended to supplant the common law.

If we construe 1 CMC § 3102(a) as the defendants urge, all interlocutory orders could be immediately appealed. This would seriously disrupt criminal proceedings at the trial level.[5] Whenever the trial court enters such an order (concerning, e.g., motions for suppression of evidence, requests for discovery, requests for severance of charges, etc.) and it is appealed, the proceedings would have to be stayed until this Court issues a ruling. It is conceivable that after we render our decision, appeals could be taken to the Ninth Circuit Court of Appeals and ultimately to the U.S. Supreme Court, further delaying the final disposition of the case.

Given the disruptive consequences of a departure from the common law, it is not surprising that the courts generally do not permit appeals from interlocutory orders unless they are expressly permitted by statute, rule or constitutional provision. See 4 C.J.S. Appeal & Error § 92 (1957).[6] It is noteworthy that statutes somewhat similar to 1 CMC § 3102(a) have been construed to preclude such appeals. "It has been held that statutes allowing appeals . . . from 'any' judgment, determination, or decision, and other

---

[5]Such a construction would have a similar effect on civil proceedings.

[6]A narrow exception to this rule is the common law "collateral order doctrine," which permits appeals from orders collateral to the principal litigation, touching matters that will not affect or be affected by decision of the merits of the case. See Di Bella, supra. "At a minimum, to come within the collateral order exception to the final judgment rule, the order sought to be appealed must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." 24 C.J.S. Criminal Law § 1672 (1989).

384

similar provisions refer only to final judgments, orders or decrees . . .." 4 C.J.S. Appeal & Error § 93 (1957) (citing Indiana, Iowa and Maryland precedent).

The common law principle described above is applicable to orders granting or denying motions to suppress evidence, which are viewed as interlocutory in nature. See, e.g., United States v. Rosenwasser, 145 F.2d 1015 (9th Cir. 1944), denying an appeal from such an order: "appeals from interlocutory orders are exceptional in character and are wholly dependent upon statute; therefore, the fundamental rule . . . requiring finality of decision as a basis for appeal must be followed unless an express authorization for a different procedure can be found." Id. at 1018. See also Di Bella, supra; People v. Dailey, 639 P.2d 1068 (Colo. 1982); Schwende v. Sheriff, Washoe County, 466 P.2d 658 (Nev. 1970).

III.

We construe 1 CMC § 3102(a) to grant this Court appellate jurisdiction over Superior Court judgments and orders which are final. Since the statute does not expressly permit appeals from interlocutory orders,[7] the orders denying the defendants' motions to suppress the breathalyzer evidence are not immediately appealable. The government's motion to dismiss the appeal is hereby GRANTED.

---

[7]As noted in footnote 2, Com.R.App.Pro. 28(1)(2) refers to judgments or orders that are "otherwise appealable." We agree with the defendants that the quoted language relates to appeals from interlocutory orders. However, this provision is inapplicable in this case because there is no statute or rule expressly permitting the defendants' appeals.

Dated at Saipan, MP, this ___15th.___ day of October, 1990.

_____
Jose S. Dela Cruz, Chief Justice

_____
Ramon G. Villagomez, Associate Justice.

_____
Jesus C. Borja, Associate Justice