**In re W.R. GRACE & CO.–CONN. and United States Gypsum Company, Petitioners.**

**No. 90–4905.**

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1991.

Patricia S. Greek, Kathleen E. Fenwick, Andrews & Kurth, Houston, Tex., Walter

J. Crawford, Beaumont, Tex., Charles D. Cole, Jr., Meyer, Suozzi, English & Klein, Mineola, N.Y., for W.R. Grace & Co.-Conn.

Amelia C. Kittredge, Morgan, Lewis & Bockius, Philadelphia, Pa., Stephen S. Andrews, Woodard, Hall & Primm, Houston, Tex., for U.S. Gypsum Co.

Martin Dies, Orange, Tex., Robert B. Watts, Bracewell & Patterson, Houston, Tex., Richard C. Hile, Tonahill, Hile, Leister & Jacobellis, Jasper, Tex., Williams H. Yoes, Benckenstein, Oxford & Johnson, Beaumont, Tex., for TX Public Entities.

Before GEE, JOHNSON, and WIENER, Circuit Judges.

PER CURIAM:

In this petition for a writ of mandamus, petitioners W.R. Grace & Co.-Conn. and United States Gypsum Company (Grace and U.S. Gypsum [*] or collectively petitioners) request the court to issue a writ of mandamus to vacate an order of the United States District Court for the Eastern District of Texas entered on October 19, 1990. The district court order permitted various Texas public entities to intervene in *Dayton Indep. School Dist. v. U.S. Mineral Prods. Co.* (*Dayton II*), an asbestos removal cost recovery action. The intervenors had previously been plaintiffs in *County of Orange v. National Gypsum Co.*, another asbestos removal cost recovery action, which this court had dismissed for lack of subject matter jurisdiction after the district court had consolidated it with *Dayton II.* For the reasons stated below, we deny the petitioner's request for a writ of mandamus.

## OPERABLE FACTS

We rejoin, though a long way yet we suspect from *in medias res,* a dispute that has already expanded to epic proportions.

Our most recent decision in this litigation, *Dayton Indep. School Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059 (5th Cir.1990) (*Dayton* Appeal), having narrated at length the history of this dispute up to July 26, 1990, we relate here only those events which bring the saga up to date.

On July 26, 1990, this court dismissed the *County of Orange* case for lack of subject matter jurisdiction. Furthermore, having dismissed a non-diverse party from *Dayton II,* thereby restoring diversity jurisdiction, we remanded *Dayton II* to the district court. On July 31, August 1 and August 2, 1990, in six federal courts in Texas, Grace and U.S. Gypsum filed declaratory actions against some of the plaintiffs in the dismissed *County of Orange* case, alleging that the Texas Statute of Repose, Tex.Civ. Prac. & Rem. Code Ann. §§ 16.008 and 16.009 (Vernon 1990), barred all the claims of the defendants in the declaratory judgment suits.

Alleging diversity jurisdiction and common questions of law and fact, the dismissed *County of Orange* plaintiffs filed, on August 1, a motion to intervene in *Dayton II.* Seeking to have *Dayton II* dismissed by the same panel of this court that had rendered *Dayton* Appeal, Grace filed a petition for rehearing the *Dayton* Appeal on August 9, 1990. The panel denied Grace's petition for rehearing on August 28, 1990. The mandate in the *Dayton* Appeal issued on September 20, 1990; and on October 9 and 18, the district court entered orders pursuant to that mandate.

Both sides having filed briefs and supplemental briefs on the *County of Orange* plaintiffs' motion to intervene in *Dayton II,* the district court held a hearing on the motion on October 4, and granted intervention on October 19, 1990. Grace moved the district court, on October 25, 1990, to reconsider its order and, as alternative relief, requested the district court to certify its intervention order for appeal, pursuant to 28 U.S.C. § 1292(b). The district court's order denying all the relief that Grace had

---

[*] U.S. Gypsum is a diverse party in Texas, not to be confused with National Gypsum, a non-diverse party in Texas.

requested in its motion for reconsideration was entered on the docket on November 14, 1990. Meanwhile, during October and November 1990, those federal district courts that ruled on Grace's and U.S. Gypsum's declaratory judgment actions either stayed proceedings in the actions, dismissed the actions, or transferred them to the Eastern District where *Dayton II* was proceeding.

On December 6, 1990, Grace and U.S. Gypsum filed this petition for writ of mandamus in this court. They also requested that, pending the outcome of this petition, we stay proceedings in *Dayton II*. On December 10, we granted the petitioners' motion for a stay, and we granted the *County of Orange* plaintiffs ten days in which to respond to the petition for mandamus. On December 20 they filed their objection to the petition, and on January 2, 1991, Grace and U.S. Gypsum filed their reply to the *County of Orange* plaintiffs' objections.

## STANDARD OF REVIEW

Because the supervisory writ of mandamus is an extraordinary remedy, we issue one only in extraordinary or compelling situations. *Kerr v. United States*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976); *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967); *In re Fibreboard Corp.*, 893 F.2d 706, 707 (5th Cir.1990). "[O]nly exceptional circumstances amounting to a judicial 'usurpation of power,'" *Will*, 389 U.S. at 95, 88 S.Ct. at 273, or "'clear ... abuse of discretion' when 'no other adequate means of obtaining relief is available,'" *Fibreboard*, 893 F.2d at 707 (5th Cir.1990) (citations omitted), justifies invoking this extraordinary remedy. The petitioner has the burden of establishing by a "clear and indisputable" showing that he is entitled to the writ. Petitioners here make no such showing.

## DISCUSSION

As the petitioners Grace and U.S. Gypsum point out, the sole issue here is whether the district court order permitting the *County of Orange* plaintiffs to intervene in *Dayton II* contravenes the mandate of this court in the *Dayton* Appeal, 906 F.2d 1059. The petitioners argue that this court's refusing to exercise its discretionary power to grant the *County of Orange* plaintiffs leave to amend their complaint so as to dismiss the non-diverse National Gypsum in the *County of Orange* suit necessarily foreclosed the district court's discretion on remand to permit intervention. Grace and U.S. Gypsum also contend that the panel's dismissing the *County of Orange* suit "in its entirety" reinforces the preclusive effect of the refusal to sanction an amended complaint. We disagree.

We dismissed the *County of Orange* suit because "[a]t no time since its inception ha[d] there been federal question or diversity jurisdiction in the *County of Orange* suit." *Dayton* Appeal, 906 F.2d at 1067. In refusing to grant leave to amend so that the *County of Orange* plaintiffs might dismiss the non-diverse National Gypsum, we explained that

> Plaintiffs-appellees attempted to bootstrap themselves into federal court by virtue of their CERCLA claims. There is no justification to complicate this complex litigation further by allowing the entire nature of the case to be altered. We dismiss this suit in its entirety.

*Dayton* Appeal, 906 F.2d at 1067.

The procedural history of the *County of Orange* suit as we described it in the *Dayton* Appeal reveals how permitting an amended complaint would have unnecessarily complicated the litigation.[1] The *County*

---

1. Asserting a claim under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607(a), County of Orange initially filed suit in federal court against the non-diverse National Gypsum. Before "National Gypsum was served, an amended complaint was filed, naming six new plaintiffs who brought pendent state law claims against original defendant National Gypsum and against two new defendants, [petitioner] Grace and [petitioner] U.S. Gypsum." *Dayton* Appeal, 906 F.2d at 1062. The record as it appears before us does not indicate that County of Orange, which initiated the action, brought pendent state claims against either National Gypsum or against

*of Orange* plaintiffs intended in the amended complaint to drop National Gypsum—the only non-diverse party. *Dayton*, 906 F.2d at 1067. But the consolidated actions would have remained even though the only defendants in *County of Orange* would then have been Grace and U.S. Gypsum, already defendants against identical pendent state claims in *Dayton II.*

In refusing to permit an amended complaint and in dismissing the *County of Orange* action, this court by necessary implication chose not to sanction consolidation of the two cases when "at no time since its inception" had federal jurisdiction been present in *County of Orange.* In doing so, however, we passed no judgment on the merits of the plaintiffs' complaints against Grace and U.S. Gypsum, nor did we otherwise restrict the plaintiffs' rights to pursue their actions.[2] We did not dismiss their suit with prejudice. The sole basis for our decision was to avoid complicating already complex litigation further. Rather than requiring the district court to maintain consolidated actions when one of those suits lacked the requisite federal jurisdiction, our refusal to grant leave to amend restored

discretion to determine how to structure the subsequent litigation to the district court, where that discretion properly rests.[3]

In *Dayton* Appeal we did not address, nor—as both sides agree—could we have addressed, the issue of intervention when the consolidated actions were before us.[4] Although a motion to intervene was, as the plaintiffs' actions before our decision indicate, an obvious means for the plaintiffs to pursue their actions, they also had other options in the wake of our *Dayton* Appeal decision. For instance, as their earlier actions reveal, the *Dayton II* plaintiffs might have pursued a Fed.R.Civ.P. 21 motion to add the *County of Orange* plaintiffs. How the parties would respond procedurally was their choice to make. This court is not in the business of schooling parties how to litigate. The district court is best situated to respond to the options available to the parties and to manage the subsequent litigation.

## CONCLUSION

Because the district court order permitting intervention in *Dayton II* does not contravene the mandate of this court in the

---

Grace. Later, after the district court had consolidated the *Dayton II* and the *County of Orange* suits, all the *County of Orange* plaintiffs brought CERCLA claims in the "First Amended Original Consolidated Complaint" against all of the defendants in that action. During the time this court had appellate jurisdiction over part of the case, the district court granted the plaintiffs leave to amend their first amended consolidated complaint. In the subsequent second amended consolidated complaint, all plaintiffs in both actions dropped all claims against the non-diverse National Gypsum and dropped all claims against all defendants based on CERCLA. *Id.* at 1062–63. We decided that the district court had no authority to permit this second amended complaint while that aspect of the case was before this court on interlocutory appeal. *Id.* at 1063.

2. The petitioners claim that because Fed.R. Civ.P. 24(b) is the "functional equivalent" of Fed.R.Civ.P. 15(a) and because this court expressly refused to permit the *County of Orange* plaintiffs to amend under Fed.R.Civ.P. 15(a), this court by necessary implication foreclosed the district court's exercising its discretion to permit intervention under Fed.R.Civ.P. 24(b).

Petitioners cite no cases to support their "functional equivalent" argument, which we re-

ject. Rule 24(b) requires that the claim or defense of those seeking to intervene and the main action have a question of law or fact in common. Its purpose is to help resolve efficiently claims that share a common question of law or fact. Rule 15(a) does not require a common-question nexus.

3. We see no need to address the issue, which both sides to this dispute raise, of what constitutes the "law of the case" in the *Dayton* Appeal. As our opinion makes clear, we see no conflict between our decision in the *Dayton* Appeal and the district court's consideration of the motion to intervene which necessitates our reaching this issue.

4. The petitioners have conceded that whether the intervention order meets the requirements of Rule 24 is irrelevant to this court's consideration of the mandamus petition. Nevertheless, we point out here that an order allowing intervention is not a final order and is not appealable. *Wheeler v. American Home Prods. Corp.*, 582 F.2d 891, 896 (5th Cir.1977). The proper remedy for reviewing such an order is appeal from final judgment. *In re Estelle*, 516 F.2d 480, 484 (5th Cir.1975), *cert. denied, Estelle v. Justice*, 426 U.S. 925, 96 S.Ct. 2637, 49 L.Ed.2d 380 (1976).

**46**

*Dayton* Appeal, the petition for writ of mandamus is DENIED and the stay of proceedings in *Dayton Indep. School Dist. v. U.S. Mineral Prods.* that this court entered on December 10, 1990, is VACATED.

*It is so ordered.*