ARTHUR YOUNG & COMPANY et al., Petitioners,

v.

UNITED STATES DISTRICT COURT, etc., Respondent,

Albert Kaufman et al., Real Parties In Interest.

No. 75–1990.

United States Court of Appeals, Ninth Circuit.

March 4, 1977.

M. Laurence Popofsky, Douglas M. Schwab, Daniel E. Titelbaum, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., Paul J. Bschorr, Vincent R. Fitzpatrick, Jr., White & Case, New York City, for petitioners Arthur Young & Company, Page, Kost, Orr and Burrill.

Joseph A. Ball, Albert H. Ebright, Ball, Hunt, Hart, Brown & Baerwitz, Beverly Hills, Cal., for petitioner Simon Ramo.

Robert S. Warren, Martin C. Washton, Gibson, Dunn & Crutcher, Los Angeles, Cal., Richard J. Archer, Kristina M. Hanson, Stephen H. Greenleaf, Sullivan, Jones & Archer, San Francisco, Cal., for petitioner Otis Chandler.

H. Donald Harris, Jr., Robert K. Schiebelhut, Lillick, McHose & Charles, San Francisco, Cal., for petitioner Edmund R. Beckwith, Jr.

Frederick P. Furth, Law Offices of F. P. Furth, San Francisco, Cal., for (appellee) respondent.

Edward J. Ruff, Thelen, Marrin, Johnson & Bridges, Patrick J. Maloney, Jr., Sullivan, Roche & Johnson, San Francisco, Cal., Robert E. Burke, Orinda, Cal., Arthur J. Lempert, Layman & Lempert, Citrix Oil Co., Stuart M. Kaplan, San Francisco, Cal., Richard G. Wilson, Allen, Wilson & George, Inc., Long Beach, Cal., Jacqueline C. Aldrich, George S. Barulich, Doyle and Barulich, San Francisco, Cal., Stuart M. Kaplan, Thomas R. Fahrner, Law Offices of Frederick P. Furth, Robert E. Gonzales, Gonzales, Mitchell & Ortiz, Marvin D. Morgenstein, Steinhart, Goldberg, Feigenbaum & Ladar, James Martin MacInnis, San Francisco, Cal., for Real Parties In Interest.

Before BROWNING and CHOY, Circuit Judges, and LUCAS,* District Judge.

## OPINION

LUCAS, District Judge:

This petition is brought pursuant to the All Writs Statute, 28 U.S.C. § 1651. It arises out of three related civil actions now pending in the Northern District of California.[1] The district judge presiding over the cases certified each action as a class action with respect to certain issues, reserved other issues for separate determination, and required the preparation and mailing of notices to members of the classes. Petitioners, defendants in one or more of the actions below,[2] seek a writ of mandamus, or

---

* Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

1. These actions are entitled and numbered *Albert Kaufman, etc., v. John P. Burke, etc., et al.*, No. C–72–1473 WTS (hereinafter "*Kaufman*"); *Joe Ebner, etc., v. Petroleum 2000 Corporation, et al.*, C–73–0716 WTS (hereinafter "*Ebner*"); and *James Howenstine, et al., v. Petroforce Corporation, et al.*, No. C–74–0957 WTS (hereinafter "*Howenstine*"). Also pending in the district court are *Securities & Exchange Commission v. Geotek Resources Fund, Inc., et al.*, No. C–73–0819 WTS, (hereinafter the "*S.E.C. action*"), and *Edmund H. Shea v. John P. Burke*, No. 73–0899 WTS (hereinafter "*Shea*"). The *S.E.C. action* seeks injunctive relief against those allegedly involved in the J. B. Venture and Geotek partnership schemes described later in this opinion, and appointment of a receiver for the Geotek partnerships and all the Burke corporations. The *Shea* action is a private, individual action for damages based on the J. B. Venture and Geotek partnership sales and brought under the federal securities laws. These two actions were originally scheduled to be tried in a consolidated trial with the *Ebner*, *Howenstine*, and *Kaufman* claims, but the district judge has ordered the *S.E.C.* action tried separately. These two actions are not presently before us.

2. The petitioners are Otis Chandler and Arthur Young & Co., Inc., defendants in all three actions, and Simon Ramo and Edmund Beckwith, defendants in *Kaufman* only. Beckwith had been named in the *Ebner* action, but was dismissed from the action by summary judgment.

some other appropriate writ, that would require the district court in each case, to vacate and set aside its order and strike all the class allegations from the complaint. Alternatively, they seek a writ of mandamus which would order the district court to certify its order for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). They have also filed an appeal from the class certification order under 28 U.S.C. § 1291. The real parties in interest, the named plaintiffs below, oppose the petition and move to dismiss the appeal. We deny the petition in its entirety and dismiss the appeal.

## BACKGROUND [3]

Plaintiffs in each of these actions seek damages and equitable relief for fraudulent investment schemes of which John Burke, a defendant in the actions below but not a petitioner here, allegedly was the primary creator and promoter. From 1964 through 1968, J. B. Oil Company, a corporation controlled by Burke, initiated the sale of interests in five oil exploration joint ventures (the "J. B. Ventures"). These interests were offered by means of written circulars and other written promotional devices, as well as through oral solicitations. In 1970, the interests of all investors in the four 1964 through 1967 J. B. Ventures were exchanged for stock in Petroleum 2000 Corporation, a corporation controlled by Burke. In 1971, the interests in the 1968 J. B. Venture were exchanged for shares in Petroforce Corporation, another Burke controlled entity. From 1969 through 1971, Geotek Resources Fund, Inc., and GTR Management (the "Geotek corporations") formed and sold interests in five limited partnerships (the "Geotek partnerships") set up to explore for both oil and gas. These partnership interests were sold pursuant to a registration statement and prospectus filed with the Securities and Exchange Commission. At all times relevant to this litigation, Burke was an officer and

director of both Geotek corporations. He originally owned all the outstanding shares of GTR.

The *Ebner* action, filed February 1, 1973, is based on the sales of 1964–1967 J. B. Ventures and the exchange in 1970 of those joint venture interests for shares in Petroleum 2000. Claims are asserted under § 10(b) of the 1934 Securities and Exchange Act (15 U.S.C. § 78j(b)), and S.E.C. Rule 10b–5 promulgated thereunder (17 C.F.R. § 240.10b–5). Plaintiff Ebner alleges that he bought an interest in the 1965 J. B. Venture and traded that interest for Petroleum 2000 shares in 1970. The certification order designates Ebner as the class representative for all those who bought interests in the 1964–1967 J. B. Ventures and all shareholders of Petroleum 2000 Corporation. This class consists of 319 investors. The complaint in *Ebner* alleges, in essence, that misrepresentations and misleading omissions were made in offering circulars and promotional material disseminated in connection with the sales of J. B. Ventures and the Petroleum 2000 exchange.

*Howenstine* was filed on May 3, 1974; here again, § 10(b) and Rule 10b–5 are the grounds stated for the relief sought. The named plaintiffs are an individual investor in the 1968 J. B. Venture and an unincorporated association of five investors in that venture. The April 21, 1975 order certifies the class in this action as all those who brought interests in the 1968 J. B. Venture and all shareholders of Petroforce Corporation. There are 187 such investors. The *Howenstine* complaint alleges that materially false and misleading statements were made in advertising brochures used to solicit purchases of the 1968 J. B. Venture interests, in the Venture agreement sent to investors in the 1968 J. B. Venture, in a printed circular that tendered the Petroforce shares for the J. B. Venture interests in 1971, and in various financial statements

---

**3.** In certifying the classes, the district judge did not make detailed findings of fact. The statement of facts given in this opinion is derived from the allegations of the complaints and factual material submitted to the district court by the defendants in connection with the class certification motions. See *Blackie v. Barrack,* 524 F.2d 891, 900–901, n.16, 17, *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

prepared by Arthur Young & Co. in connection with the sale and operations of the venture and corporation.

The *Kaufman* action, filed August 14, 1972, arises out of the Geotek partnership sales. The complaint is based upon § 12(2) and § 17 of the 1933 Securities Act (15 U.S.C. §§ 77*l*(2), 77q), § 10(b) of the 1934 Act, and Rule 10b–5. This plaintiff now contends that his action is also proper under § 11 of the 1933 Act (15 U.S.C. § 77k), although this section was not specifically pleaded as a basis for relief.[4] Plaintiff Kaufman purchased interests in the first two of the five Geotek partnerships and, by the district court's certification order, represents the purchasers of interests in each of the Geotek partnerships. This class consists of 1,215 members. The *Kaufman* complaint describes petitioners Chandler and Ramo as directors of the Geotek corporations at all relevant times. Petitioner Beckwith held, and still holds, various officer positions with the corporations according to the complaint. Petitioner Arthur Young & Co. allegedly performed auditing and other accounting services for the Geotek corporations and partnerships. All the petitioners are alleged to have knowingly participated in, and aided and abetted, the conduct alleged in the complaint. The complaint sets forth materially false and misleading statements that allegedly appeared in the prospectuses issued by the corporations in connection with the sales of the partnership interests. In addition, the complaint alleges that Burke made various oral misrepresentations to plaintiff Kaufman and others regarding the Geotek partnership.[5]

In opposition to the motion to certify the classes, petitioners submitted evidence which they contend demonstrates the impropriety of the class certifications. They presented their own exhibits and affidavits, as well as responses given in discovery by named plaintiffs. The evidence which petitioners presented indicates that some interests in each of the J. B. Ventures were sold by means of oral presentations given to investors by Burke and another defendant. Petitioners contend that the other defendants, including themselves, did not participate in these solicitations. In making their investment decisions, say the petitioners, some of the investors relied on these presentations, or on the advice of others, and not on any written material. Some of these investors had personal contact with the defendants, say petitioners, but others did not. The petitioners have further shown that the investors in the J. B. Ventures were sophisticated investors with high incomes. They contend that these investors were looking for risky investment as tax write-offs, and that some members of the *Ebner* and *Howenstine* classes were dissatisfied with the Burke programs as early as 1966 and had made inquiries and complaints to various agencies some time prior to 1970.

In addition, the petitioners raise questions about special arrangements, such as finders' fees and kickbacks, which Burke

---

**4.** This contention is opposed by petitioners and has been vigorously argued throughout the Rule 23 proceedings. The issue, however, has not yet been presented to the district court for formal decision. The district court class certification order did not specify the provisions of federal law under which trial in these cases is to proceed. The division of issues made by the order could be interpreted to either approve class trial of all § 11 liability issues in *Kaufman,* or to ignore the § 11 claims in their entirety. Petitioners' opposition to the class certification in *Kaufman* is premised on the non-existence of § 11 claims in that action. Petitioners have made no argument that § 11 claims in *Kaufman* cannot be tried on a class basis in one trial if the district court concludes them to have been asserted.

**5.** The claims based on possibly-divergent oral misrepresentations made by Burke and others to investors in the Geotek partnerships and J. B. Ventures complicate any consideration of class certification in these actions, because common issues presented by the various claimants on these claims may not be as many as on the claims arising out of the written material. In an apparent attempt to allay the district court's concern about these complications, the plaintiffs withdrew all claims based on oral misrepresentations. Nevertheless, there remains the problem of defenses based on oral misrepresentations, at least in theory. See page 693 *infra.*

had with some class members. Furthermore, petitioners note that the Geotek partnerships were also sold to high income investors through oral presentations; as set out in *Kaufman's* complaint, and as stated by him in deposition, he bought his Geotek interest after such a presentation. Finally, petitioners presented some evidence relating to the possible conflicts between the respective class representatives and their classes. All of this information was, of course, before the district court when it made its determination to certify the classes.

The class certification order was entered after many lengthy hearings on the class motions, extensive briefing by the parties, and serious and careful consideration of the entire matter by the district judge. An important feature of this order was that it certified certain issues for class adjudication but excluded others from the initial class trial. The order provided for certification of each action on the following terms:

(a) As to the issues of liability of general application, excluding the following issues: reliance or causation, duty owed to the individual claimant insofar as it may vary depending upon the status of that claimant, knowledge of the claimant investor as to the facts allegedly misrepresented or omitted, statute of limitations, laches, waiver, estoppel, ratification, unclean hands and pari delicto;

(b) As to the issue of damages only to the extent of determining the value of the [particular interest received by the investor], together with loss of profits, if any, within the meaning of California Civil Code Section 3343, up to the time of trial.

The order further excluded evidence of defendants' oral misrepresentations from presentation at the class trial. The order, in addition, set the issues reserved to be determined: "Upon individual claims to be filed within ninety days of any judgment in the action in favor of the plaintiffs." It also stated that the district court retained jurisdiction to modify the order at any time, prior to a decision on the merits of the case. Class notices were ordered prepared and submitted for mailing. The motions of the defendants that the actions not be maintained as class actions were denied.

Upon receipt of the class certification order, petitioners filed a motion for certification of the order for appeal pursuant to 28 U.S.C. § 1292(b). Shortly thereafter, they noticed an appeal pursuant to 28 U.S.C. § 1291, and then filed the writ petition along with an application for a stay of the district court proceedings. After hearings in the district court, the district judge stayed mailing of the class notices and commencement of the trial for a limited time to allow review of his rulings. The district judge also denied the motion to certify the class order for interlocutory appeal, and he later severed the S.E.C. action trial from the trial of the other actions.

This court issued an order that stayed the trial and the mailing of the class notices pending disposition of the writ of mandamus. We then dismissed the petition for a writ in the *Shea* action, vacated the stay as to that case, and ordered that the remainder of the petition be set down for oral argument. We have heard argument, and the petition has been submitted for our consideration.

The petitioners argue that the district court's order effectively denies them the Seventh Amendment right to a jury trial on the issues of their liability and the plaintiffs' damages. This is true, they assert, because the issues certified for class treatment by the district court are not so distinct and separable from the issues left for later determination that separate trials of those issues before separate juries can be held consistent with the Seventh Amendment. *See Gasoline Products v. Champlin Refinery Co.,* 283 U.S. 494, 51 S.Ct. 531, 75 L.Ed. 1188 (1931); *United Air Lines, Inc. v. Wiener,* 286 F.2d 302 (9th Cir.), *cert. denied,* 366 U.S. 924, 81 S.Ct. 1352, 6 L.Ed.2d 384 (1961). The petitioners contend that as a result of this error each of them faces the prospect of either accepting millions of dollars in liability by settlement, or going for-

ward, after a cumbersome class trial, with a series of burdensome and virtually endless trials on issues distinctive with each claimant. They further contend that the certification order does not accord with Fed.R. Civ.P. Rule 23, and that the cases are not proper for class treatment because, "individual issues predominate, the actions as class actions are unmanageable, the class action device is not the superior method of resolving the controversies presented, and the class representatives are not adequate fairly to protect the interests of all investors."

## REVIEW BY MANDAMUS

The Supreme Court has recently stated that "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States District Court, etc.*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976). In *Kerr*, the Court noted decisions that had expanded the use of mandamus beyond its traditional limited use as a means of confining a lower court to the "lawful exercise of its prescribed jurisdiction" or compelling it " ' "to exercise its authority when it is its duty to do so," ' " *Id.*, 426 U.S., at 402, 96 S.Ct., at 2124, citing *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305, quoting *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 and still approved the less restricted definition of "jurisdiction" it had applied in *Will v. United States, supra. See Kerr v. United States, supra,* 426 U.S., at 402, 96 S.Ct., at 2124. Nevertheless by its opinion in *Kerr*, the Supreme Court emphasized the "extraordinary" nature of the writ, reaf-

firmed that only exceptional circumstances amounting to a judicial "usurpation of power" will justify the invocation of this extraordinary remedy,[6] and clarified the proper nature and scope of our inquiry on review by mandamus.[7] The Court said:

"As a means of implementing the rule that the writ will issue only in extraordinary circumstances, we have set forth various conditions to its issuance. Among these are that the party seeking issuance of the writ have no other adequate means to attain the relief he desires, *Roche v. Evaporated Milk Assn.*, 319 U.S., at 26, 63 S.Ct., at 941, and that he satisfy 'the burden of showing that [his] right to issuance of the writ is "clear and indisputable." ' *Bankers Life & Cas. Co. v. Holland*, 346 U.S. [379], at 384, 74 S.Ct. [145], at 148, [98 L.Ed. 106], quoting *United States ex rel. Bernardin v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286, 287, 43 L.Ed. 559 (1899); *Will v. United States*, 389 U.S., at 96, 88 S.Ct., at 274. Moreover, it is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed. *Schlagenhauf v. Holder*, 379 U.S. 104, 112 n.8, 85 S.Ct. 234, 239, 13 L.Ed.2d 152 (1964); *Parr v. United States*, 351 U.S. [513], at 520, 76 S.Ct. [912], at 917 [, 100 L.Ed. 1377]. See also *Technitrol Inc. v. McManus*, 405 F.2d 84 (CA 8), *cert. denied*, 394 U.S. 997, 89 S.Ct. 1591, 22 L.Ed.2d 775 (1969); *Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949 (CA 9 1968)." 426 U.S., at 403, 96 S.Ct., at 2124–25.

The Supreme Court has thus directed us to examine, on a petition for a

---

6. 426 U.S. at 402, 96 S.Ct. at 2124.

7. *Kerr* recognizes a petition for a writ of mandamus can put the respondent judge in the unusual and "unfortunate" position of dependence on a litigant for his defense in the Court of Appeals. *Id.*, 426 U.S. 394, at 402, 96 S.Ct., at 2124. The petition also makes the judge an adversary to a party interested in litigation pending before the judge. More important the Court went on to describe the legislatively and judicial policy against "piecemeal litigation" that underlies the treatment of the mandamus remedy as an extraordinary one. *Ibid.* The

Court perceived the expanded use of the writ would have an adverse effect on the "fair and prompt administration of justice." particularly in this "era of excessively crowded lower court dockets. *Ibid.* A grant of the writ in this case would certainly have the deleterious effect of encouraging frivolous and dilatory petitions under the guise of requests for "supervision" or "advice" from the Court of Appeals on matters traditionally within the exclusive sphere of the trial court's discretion, at least until final judgment has been entered.

writ of mandamus, the degree of certainty that there was error committed by the district court and the alternative procedural means available to either correct the error or remedy the collateral harm that will flow from the error. If we determine that the error, if any, is not "clear and indisputable," or that there are alternative means available to correct the error or remedy the harm, the writ will not issue. Where the lack of remedy for a collateral harm is asserted as the ground for issuance of a writ, moreover, the proponent of the writ must also demonstrate that the harm will, in all likelihood occur, absent the writ. Interference with the trial court's control over its own proceeding is not a matter to be undertaken lightly or on the basis of mere speculation by the parties or the reviewing court about what may occur at some future date.

■ Once we have determined that the district court clearly erred and that the error or the injury which it causes is not remediable by other means, we may then decide whether to exercise our discretion to issue the writ. The primary consideration in any decision to exercise that discretion is the gravity and nature of the error or harm asserted as a basis for the writ. Other significant factors may come into play, however, such as the effect of issuance of the writ on the proceedings below when viewed in light of all the circumstances of the litigation, or some public, judicial, or legislative policy that, in the particular instance weighs for or against issuance of the extraordinary writ.

■ For the reasons given below, we conclude the petitioners have not demonstrated with certainty that the district judge made a clear and indisputable mistake in certifying the class issues and separating certain other issues for individual adjudication. Having failed to find any error that was "clear and indisputable," we need not determine whether remedies alternative to mandamus exist or whether the gravity and nature of the harm compels us to exercise our discretion to issue the writ. We conclude, therefore, that "compelling circumstances" do not exist under the facts of this case sufficient to empower us to invoke the extraordinary remedy.[8]

## LACK OF CLEAR ERROR

Fed.R.Civ.P. 42(b) provides district courts with the power to order a separate trial of any issues when such an order is "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R. Civ.P. 23(c)(4) allows for class treatment of particular issues if such treatment is otherwise appropriate under Rule 23. Rule 23(d) provides the trial judge presiding over any class action with "extensive powers to expedite the suit with procedural innovations." *Blackie v. Barrack*, 524 F.2d 891, 907, n.22 (9 Cir. 1975) *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

■ Each of the rules just cited are, of course, subject to the Seventh Amendment's guarantee of the right to a jury trial in federal civil cases. The constitutional right to a jury trial has been held to require trial of all issues before one jury in some circumstances. *Gasoline Products Co. v. Champlin Refining, supra; United Air Lines, Inc. v. Wiener, supra.* The right to a

---

**8.** We perceive no conflict between our opinion and that of the Court in *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335 (9th Cir. 1976). In *Green*, the "clear and indisputable" error furnished the "compelling circumstances" necessary for the issuance of the writ. In *McDonnell Douglas Corp. v. U. S. Dist. Ct.*, 523 F.2d 1083, 1097 (9th Cir. 1975), this Circuit issued a writ of mandamus where the district court's decision constituted a "clear abuse of discretion" and the same district judge had "reached an identical decision in a prior case. . . . ." We also note the *McDonnell Douglas* opinion found the district court's order was directly contrary to a recent decision of the Ninth Circuit. This amounts to adherence to the "clear error" rule we follow here. *McDonnell Douglas*, decided prior to *Kerr v. United States District Court, supra*, does not discuss the availability of other relief as required by *Kerr*, although it appears the collateral harm to be suffered by the mailing of notice to the class, a matter of primary concern in a companion decision, *Pan Am. World Airways, Inc. v. United States District Court*, 523 F.2d 1073 (9th Cir. 1975) was considered by the court in *McDonnell Douglas*.

unitary jury trial is not an absolute one, however, *Swofford v. B & W, Inc.*, 34 F.R.D. 15, 20 (S.D.Tex.1963), *aff'd* 336 F.2d 406 (5 Cir. 1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965); *O'Donnell v. Watson Bros. Transportation Co.*, 183 F.Supp. 577 (N.D.Ill.1960), a principle recognized by both the *Gasoline Products* and *United Air Lines* decisions. In *United Air Lines*, for example, this Circuit expressly refused to hold that such an absolute right exists, but rather stated that where the questions sought to be bifurcated were "[s]o interwoven . . . that the [one] cannot be submitted to the jury independently of the [other] without confusion and uncertainty which would amount to a denial of a fair trial . . . [citing *Gasoline Products*]," 286 F.2d, at 306, the bifurcation was unconstitutional. Furthermore, aside from any issue of trial by separate juries, there is no Seventh Amendment requirement that all evidence be presented to the trier of fact at one hearing. As stated by the Supreme Court in *Gasoline Products*:

> "All of vital significance in trial by jury is that issues of fact be submitted for determination with such instructions and guidance by the court as will afford opportunity for that consideration by the jury which was secured by the rules governing trials at common law. [Citations omitted]. Beyond this, the Seventh Amendment does not exact the retention of old forms of procedure." 283 U.S. at 498, 51 S.Ct., at 514 (1931).

The Supreme Court has not given the problem of bifurcated jury trial significant consideration since the 1931 *Gasoline Products* decision, or in the light of the 1938 adoption of the modern Federal Rules of Civil Procedure, or the 1966 amendments to Fed.R.Civ.P. 23 and 42. Nevertheless, we believe *Gasoline Products*, with its emphasis on the substance of the right to a jury trial rather than its form, speaks directly to contemporary courts faced with modern litigation of substantial complexity. As long as the form of trial adopted by the trial court "will afford opportunity for the consideration by the jury" provided at common law, there is no violation of the rights to a jury trial. *Gasoline Products Co. v. Champlin Refining Co., supra*; see also *United Air Lines, Inc. v. Wiener, supra.*

As set out at page 690 *supra*, the district court's order provides for determination of the issues excluded from the class certification and trial at the second trial to take place at least ninety days subsequent to any judgment in favor of the plaintiffs in the class trial. Assuming the first trial is heard and the class issues determined by one jury, as had been requested by the defendants, we perceive no absolute bar, constitutional or otherwise, to resolution of any remaining issues before either the same [9] or a second jury. None of the issues reserved are part of the class plaintiff's case-in-chief. Rather they represent separate defenses that may be raised to defeat the claims of certain members of the class. At present, it does not appear that these defenses will be raised to defeat the claims of all or many of the class members.[10] Furthermore, these defenses are distinct from

---

9. Petitioners characterize as "disingenuous" the suggestion that trial of all issues in these cases will be had before one jury. There is nothing in the district court order that would preclude such a procedure, as a practical matter, and we find nothing inherently wrong with such a procedure. It may be that the district court does not contemplate this procedure, but it would be presumptuous of us to assume the district court's intention in this regard.

10. The significance of the district court's separation of certain liability issues from the class issues for later determination is not self-evident. It may be he concluded that such issues are non-existent for all or almost all of the claims in the litigation, and he did not want to clutter trial of the bulk of the class claims with trial and discovery on the relatively few claims on which the defenses were to be raised. On the other hand, it may be he felt the issues reserved would become substantial but individual for each potential claimant. We are of the view that if the issues left for later determination are, in fact, substantial ones for all or most of the claimants, they would be amenable to class proof. See *Blackie v. Barrack, supra*, 524 F.2d, at 906–07, n.22. This would make the bifurcation unnecessary and allow for full resolution of all issues at one hearing on a class basis. Considering the record before us, we take the district court's bifurcation order to mean that he found individual issues to exist in

the class issues in the cases. At this time, we cannot say, as a matter of law, that the reserved issues are so "interwoven" with the class issues that presentation of all the issues together at one hearing before one trier of fact is necessary to comport with the guarantees of the Seventh Amendment. Our conclusion that there was no "clear error" is supported by an examination of the various individual and class issues involved in this litigation.

Petitioners contend that the separate issues to be tried at the first class trial are whether misrepresentations or omissions of fact were made in connection with the J. B. Venture or Geotek partnership sales or the exchange of Petroleum 2000 or Petroforce stock, whether a particular defendant bears responsibility for any false or misleading statement so made, and whether the facts misrepresented or omitted were material. The issues reserved for later determination, say the petitioners, are the claimants' reliance on the alleged misrepresentations,[11] the extent of the duty owed by the defendant to the particular claimant, the knowledge of the individual claimant about the facts allegedly misrepresented in or omitted from the statements made by defendants, and other issues concerning the conduct of each claimant that are relevant to equitable defenses raised by defendants, such as waiver, estoppel, and laches, or to a defense based on the statute of limitations. Certain damage issues also will remain.

We find nothing prejudicial about the reservation of the reliance issue. In cases where the securities fraud is accomplished primarily by not telling potential investors some fact that would effect the reasonable investment decisions of investors, there is no need to prove actual reliance on the omission by any claimant who acted differ-ently than would a reasonable investor possessed of the withheld information. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Little v. First California Co.*, 532 F.2d 1302 (9th Cir. 1976); *Blackie v. Barrack, supra*. The plaintiffs' allegations in each of these actions concern, in large part, defendants' misleading omissions. For example, information about Burke's background and his mishandling of funds was allegedly never revealed to any of the investors, and plaintiffs assert that, the true relationship of petitioner Chandler to Burke's sales programs was concealed. We are of the view the primary causation issues for most of the claims here will be the materiality of those omissions. The district court has determined that to be a class issue for each of the cases, and the defendants do not dispute that finding by the district court.

This Circuit has also expanded the *Affiliated Ute* equation of materiality and causation to include those cases involving misrepresentations that inflate the price of stock traded on the open market. *Blackie v. Barrack, supra*, 524 F.2d, at 906. The reason this proof requirement was eliminated was the "unreasonable and irrelevant evidentiary burden" it imposes on plaintiffs in Rule 10b–5 private damage actions arising out of open market frauds. *Ibid.* In *Blackie*, this Court recognized investors make their decisions based on a variety of factors, often unrelated in any direct manner to specific statements made to them about the investment by those with actual knowledge about the investment. *Id.*, at 907. The *Blackie* opinion also pointed out the indirect causal relationship between any fraud perpetrated

this litigation as reserved, but not on such a large scale as to defeat the conclusion of predominance of common issues as to most of the claims. The reservation of these questions for later trial on a few claims is within the range of procedural devices allowable under Rule 23(d).

11. We do not interpret the district court's reservation of the "reliance or causation" issues as more than a recognition that reliance can be an element of the proof on the issue of "causation" in Rule 10b–5 cases. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Blackie v. Barrack, supra*. The petitioners do not contend that the trial judge reserved any item relevant to causation other than reliance for later determination.

with respect to a particular open-market issue and the purchase of the security by the purchaser. *Ibid.* We find the *Kaufman* allegations are analogous to the *Blackie* case with respect to the plaintiffs' need to prove causation through proof of reliance. The Geotek partnerships were sold pursuant to registration statements and prospectuses filed with the S.E.C. The standardized statements appearing in the prospectuses were sent or shown to every investor in the Geotek partnerships. Just as the open market purchaser relies on the integrity of the market and the price of the security traded on the open market to reflect the true value of securities in which he invests, so the purchaser of an original issue security relies, at least indirectly, on the integrity of the regulatory process and the truth of any representations made to the appropriate agencies and the investors at the time of the original issue. In *Kaufman,* the largest of these class actions, therefore, we perceive no requirements that plaintiffs prove actual reliance on the false and misleading statements alleged in order to establish the liability of any wrongdoing defendant did to them.

There are separate problems with respect to the right of the defendants to disprove causation in *Kaufman* or the other cases.[12] *Blackie* states that the defendants in cases where causation is proved inferentially through materiality of the relevant misstatements may disprove the causal relationship between defendants' wrongful conduct and the plaintiffs' decision to invest. The defendants in the cases now before us, at least those, such as petitioners, who did not take part in the oral solicitation program, may try to disprove reliance on the omissions or written misrepresentations by a showing that plaintiffs actually relied on

the oral presentations to the exclusion of reliance on omissions or written misrepresentations. These issues may be amenable to class proof, see note 10, *supra,* but, in any event, the defendants have relied on isolated instances of alleged non-reliance by certain claimants, coupled with the existence of the oral programs, to show they will expend substantial amounts of court and jury time to disprove reliance. We find these instances of questionable evidentiary significance for purposes of making a Rule 23 determination. We do not think the petitioners have yet demonstrated that the proof of non-reliance which they expect to submit at the later trial is of such volume as to be significant to the district court's determination on the Rule 23 issues, or this court's resolution of the petition.

Another issue left for later individual determination by the district court's certification order was the question of the relationship of each of the defendants to each of the plaintiffs, and the duty owed by the particular defendant to the particular claimant. That this issue was a major one in the cases arose from the Ninth Circuit's decision in *White v. Abrams,* 495 F.2d 724, (9 Cir. 1975). That case established the "flexible duty standard" for determining the liability of a particular defendant to a particular plaintiff under § 10(b) and Rule 10(b)–5. The holding in *White v. Abrams* was predicated, in part, on the assumption that negligent conduct by a party could, in some circumstances, establish his liability in a punitive damage action under Rule 10b–5. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) eliminates negligence, however, from the law of Rule 10b–5 private damage actions, *Id.,* 425 U.S. 193–194, 96 S.Ct. at 1381.[13] The validity of the *White v. Abrams* "flexible duty

**12.** The plaintiffs base their claims in *Ebner* and *Howenstine* only on omissions allegedly made by the defendants in connection with the relevant transactions. We do not discuss, therefore, the problems these plaintiffs would face if they tried to prove those claims on a class basis.

**13.** *Ernst & Ernst v. Hochfelder* may have significant impact on the substance of the plain-

tiffs' claims in this litigation. Upon remand, we expect that one of the first orders of business for the district court will be to make a determination of the validity of the claims against petitioners and other defendants under the principles of *Ernst & Ernst v. Hochfelder.* We express no opinion on the merits of plaintiffs' claims under *Ernst & Ernst v. Hochfelder.*

standard" must, therefore, be seriously questioned. Although "reckless" conduct may still provide a grounds for recovery under Rule 10b–5 by private plaintiffs, *see Ernst & Ernst v. Hochfelder,* 425 U.S. at 193–194, n.12, 96 S.Ct. at 1381, variations in the relationship between the defendants and the plaintiffs are simply not as important in a Rule 10b–5 action under *Ernst & Ernst* as they were under *White v. Abrams.* Although issues concerning variations in the duty owed to particular claimants were reserved for individual treatment by the district court, we conclude that those issues are no longer of substantial independent significance.

Another issue reserved for later determination by the district court's order concerns the amount of information which any particular claimant had or learned about the J. B. Ventures, the Geotek partnerships, or any of the related corporations, either at the time of the purchase of interests or at some later date prior to the time the fraud perpetrated by Burke and others was disclosed to the public. Evidence of such knowledge, say the petitioners, in relevant to their basic defenses of non-reliance, and to such other defenses as waiver, estoppel, laches, and statute of limitations. To the extent these issues are not common to the classes, see note 10, *supra,* we do not think the district judge erred simply by separating them out for individual adjudication at the close of the class trial. The petitioners have again failed to demonstrate that the existence of this issue is so prevalent among the claimants that they will present much proof on the issue at the later trial. Absent such a showing, we deem it entirely appropriate for the district judge to separate out those issues for later adjudication with respect to the relatively few claims to which they are pertinent. We view this as one of the "procedural innovations contemplated by the Ninth Circuit in *Blackie v. Barrack, supra,* and by Rule 23(d) itself. It does not deny any party its constitutional rights with respect to those claimants against whom there will be no attempt to prove knowledge of the fraud. With respect to claimants petitioners contend did have such knowledge, we see no reason why these issues cannot be tried in an expeditious and fair way on a separate basis. As stated above, note 10, it is apparent that the district court found the claims of most of the class members amenable to class resolution, but also found there were individual issues extant that had to be tried, if at all, on an individual basis. The district court concluded that the limited existence of these issues was not significant enough, however, to deny class treatment to most of the claims in this litigation. We conclude that this finding was entirely justified by the record before that court and before us on appeal.

We again rely on *Blackie v. Barrack, supra,* to dismiss petitioners' contention that the reservation of some damage-related issues for resolution subsequent to the class trial was error. We reach this result not because the individual and reserved issues do not appear real as they concern damages suffered by the class members, but because these damage issues do not, as a rule, defeat class certification in cases such as these, and because separation of a trial on damage issues does not contravene the Seventh Amendment in this case.

As stated in *Blackie,* 524 F.2d, at 905:

"The amount of damages is invariably an individual question and does not defeat class action treatment. *E. g., U.S. Financial Securities Litigation,* [64 F.R.D. 443 (S.D.Cal.1974)] at 448 n.5, and cases there cited. Moreover, in this situation we are confident that should the class prevail the amount of price inflation during the period can be charted and the process of computing individual damages will be virtually a mechanical task. [citation omitted]."

It appears to us that after class trial on the primary damage issues in this case as provided by the district court's order, all that will remain is to determine the amount invested and the interest bought by each claimant, then compute damages for each claimant. We find no substantial ground for distinction between *Blackie* and our cases on this issue.

We also conclude that separation of the trial on individual damage issues from the class trial in this securities fraud class action is not a novel procedure, nor in contravention of the Seventh Amendment. Bifurcation of the trial of liability and damage issues is well within the scope of a trial court's discretion under Fed.R.Civ.P. 42(b). *Crummett v. Corbin,* 475 F.2d 816, 817 (6th Cir. 1973); *Idzojtic v. Pennsylvania Railroad Company,* 456 F.2d 1228, 1230 (3d Cir. 1972); *Moss v. Associated Transport Inc.,* 344 F.2d 23 (6th Cir. 1965). The separation of the trial on the damage issues from the class trial will, in these cases, serve the ends of "economy and expedition." As the district court stated *In Re Memorex Security Cases,* 61 F.R.D. 88, 103 (N.D.Cal.1973):

> "While the court looks with concern upon the prospect of burdening a jury with the task of analyzing the damages to each class member even with the assistance of a master, it must be kept in mind that that task need not be assumed until the issue of liability is resolved in favor of the plaintiffs. [citations omitted]."

In cases of the magnitude of these, we find it permissible to separate the individual damage issues from trial of the class issues, particularly where, as here, the damage issues reserved are a discrete aspect of the case as a whole.

It is a novel and innovative step which the district judge has taken here. If his judgment proves sound, it is a step which may result in a significant advance in methods available to courts to save time and money for litigants and judges, not only in these law suits, but also in other complex litigation where the trial judge and counsel for the parties may find the path to resolution easier because traveled before. Neither the courts nor the bar have extensive experience with actual trial of these complex cases, and, as set out in note 22 to the opinion in *Blackie v. Barrack, supra,* 524 F.2d at 906–07, this Court of Appeals has committed the resolution of many manage-

ment problems that arise in such cases to the sound discretion and experience of the district judge. We refuse to hold that the steps taken by the trial judge here are error, therefore, particularly prior to the time, if ever, that the harm done by the order to the rights asserted by the petitioners becomes manifest in the record of these cases and the experience of the parties below.

## OTHER RELIEF SOUGHT

■ In the discussion above, we have set out the reasons for our denial of the petition for a writ of mandamus.[14] As noted at page two of this opinion, petitioners have sought an alternative writ to compel certification of the class order for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b) and have also filed an appeal pursuant to 28 U.S.C. § 1291. We dismiss the appeal filed pursuant to 28 U.S.C. § 1291. This dismissal is based on *Blackie v. Barrack, supra. Blackie* held that interlocutory orders granting class certification are not appealable in this Circuit pursuant to 28 U.S.C. § 1291 until final judgment. We perceive no reason to reconsider that holding or apply a different rule to the cases now before us.

■ The request for a writ to compel certification of the interlocutory appeal presents a question which is relatively new to this Circuit. It is a question which was recently passed upon by this Circuit in the case of *Green v. Occidental Petroleum Corporation,* 541 F.2d 1335 (9th Cir. 1976). By 28 U.S.C. § 1292(b), Congress provided a means by which, in appropriate circumstances and to further economy of litigation, full appellate review of important questions can be had prior to final judgment. By its terms, this narrow exception to the finality rule can not be invoked until the district judge makes a determination that the order "involves a controlling question of law as to which there is substantial

14. The petitioners have asked also for a writ of prohibition or other writ. They have made no arguments for the issuance of such writs besides those made for the mandamus writ. We find no reason to decide any alternative writ would be any more appropriate than a writ of mandamus in this case, and, therefore, deny this alternative request for relief.

ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b). Thereafter, the Court of Appeals is vested with discretion to permit the appeal. The district judge did not make such a determination here. We hold that mandamus to direct the district judge to exercise his discretion to certify the question is not an appropriate remedy, *Green v. Occidental Petroleum Corporation,* 541 F.2d 1335 (9th Cir. 1976); *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 755 n.1 (3d Cir. 1973); *United States v. 687.30 Acres,* 451 F.2d 667, 670 (8 Cir. 1971), *cert. den.,* 405 U.S. 1026, 92 S.Ct. 1291, 31 L.Ed.2d 486 (1972); *D'Ippolito v. Cities Serv. Co.,* 374 F.2d 643, 649 (2 Cir. 1967).[15] As long as the district judge is not of the opinion that the order for which review is sought meets the criteria of 28 U.S.C. § 1292(b), it is within his power to deny the motion for certification of the appeal. The petitioner's request for a writ to compel the certification of an interlocutory appeal, therefore, is denied.

In accordance with the discussion above, we deny all relief sought by the petitioners, and dismiss the appeal petitioners have filed pursuant to 28 U.S.C. § 1291. Accordingly, there is no basis for continuing the stay previously entered in these proceedings by this Court. We vacate the stay, therefore, and remand the cases to the district court for further proceedings.

IT IS SO ORDERED.

---

**15.** *Cf.* Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b) (1975),* 88 Harv.L.Rev. 607, 616–17.