November 14, 1989

 
 

 
 
 

 
 
 
 

 
 

 
 

 
 

CLERK OF COURT
SUPREME COURT, CNMI
FILED

89 NOV 14 A 9: 39

BY:

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JOSE C. TENORIO, et al., ) <br><br> Petitioners, ) <br><br> vs. ) <br><br> SUPERIOR COURT OF THE ) COMMONWEALTH OF THE ) NORTHERN MARIANA ISLANDS, ) <br><br> Respondent, ) <br><br> and ) <br><br> L & W Corporation; et al., ) <br><br> Real Parties ) In Interest, ) <br><br> and ) <br><br> The Board of Elections of ) the Commonwealth of the ) Northern Mariana Islands, ) et al., ) <br><br> Real Parties ) In Interest. ) | ORIGINAL ACTION NO. 89-002 <br><br><br><br><br><br><br><br> OPINION[1] |

DELA CRUZ, Chief Justice:

This is a petition seeking issuance of a writ of mandamus against the Superior Court of the Commonwealth of the Northern

---

[1] This is the opinion of the Court upon which the Writ of Mandamus issued on November 2, 1989, is based.

4

Mariana Islands. Specifically, the petitioners are asking that a writ of mandamus issue against the lower court directing the latter to vacate its order entered October 19, 1989, which enjoined the Northern Mariana Islands Board of Elections from placing on the ballot for the November 4, 1989, general election a certain anti-gambling constitutional amendment initiative. It also seeks a writ directing the lower court to dismiss with prejudice the plaintiff's first amended complaint[2/] for lack of jurisdiction. Finally, petitioners ask that the lower court be directed to retain limited jurisdiction over the case for purposes of entertaining any motion for sanctions that may hereafter be brought.

The petitioners in this matter were not original parties before the Superior Court in Civil Action No. 89-957, the case from which the order being challenged arose. Their motion to intervene in the case was granted by the Superior Court on October 27, 1989, after the order had been issued, and they immediately filed the present petition. No regular notice of appeal was filed by either the original defendants or the intervenor-petitioners.[3/] Instead, the petitioners directly sought in this Court the issuance of a writ of mandamus, an extraordinary relief, against the Superior Court.

---

[2/] L & W Corporation, et al. v. Board of Elections, et al., Superior Court Civil Action No. 89-957.

[3/] We find that the Superior Court order dated October 19, 1989, is a final order since, for all practical purposes, it is a granting of an injunctive relief, requiring no further action by the Court.

5

Petitioners present two bases in support of their petition for issuance of a writ of mandamus. First, they contend that the Superior Court had no jurisdiction whatsoever to entertain the complaint filed by the plaintiffs since it was not timely filed within 30-days after the Attorney General certified on August 23, 1989, that the initiative petition submitted by the circulators complied with the requirements of law. They argue that any action for judicial review of the certification made by the Attorney General must be filed with the Superior Court within 30-days of the certification, or it will otherwise be barred by 1 CMC § 9112(b) of the Commonwealth Administrative Procedure Act (hereafter "APA").[4]

The second ground petitioners assert in support of issuance of the writ is that the Superior Court, even if it did have jurisdiction, exceeded the scope of judicial review permitted by section 9112(f)(2) of the APA, when it held that the Attorney General's administrative determination of compliance with the numerosity requirement of Article XVIII, Section 4(a) of the Constitution must be made on the date the initiative petition is submitted by the circulators, i.e. August 21, 1989.

Before addressing the grounds asserted for issuance of the writ requested, we need to first examine this Court's jurisdic-

---

[4] 1 CMC § 9112(b) provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action, is entitled to judicial review of the action within 30-days thereafter in the Commonwealth Trial Court.

tional basis for entertaining any petition for issuance of extraordinary writs. 1 CMC § 3102(b) provides as follows:

> The Supreme Court has original but not exclusive jurisdiction to issue writs of mandamus, certiorari, prohibition, habeas corpus, and all other writs or orders necessary and appropriate to the full exercise of its appellate and supervisory jurisdiction.

Like the federal All Writs Statute, 28 U.S.C. § 1651, authorizing federal appellate courts to issue writs, our all writs statute authorizes this Court to issue any writ necessary in aid of its appellate jurisdiction.

The authority of an appellate court to issue writs is not confined to the issuance of writs in aid of a court's appellate jurisdiction already acquired, but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected. American Fidelity Insurance Company vs. United States District Court for the Northern District of California, 538 F.2d 1371, 1373 (9th Cir., 1976), citing Roche v. Evaporated Milk Association, 319 U.S. 21, 25, 63 S.Ct. 938, 941 (1943). This means that there is no impediment to issuance of the writ due to lack of present appellate jurisdiction. American Fidelity Insurance Company, supra, at 1374.

Traditionally, the use of the writ in aid of appellate jurisdiction has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so. Id.

The issue to be decided by an appellate court in reviewing an

7

alleged jurisdictional error of a lower court is whether the challenged assumption or denial of jurisdiction is so plainly wrong as to indicate failure to comprehend or refusal to be guided by unambiguous provisions of a statute or settled common law doctrine. American Fidelity, supra, at 1374, citing American Airlines, Inc. v. Forman, 204 F.2d 230, 232 (3rd Cir. 1953). If a rational and substantial legal argument can be made in support of the questioned jurisdictional ruling, the case is not appropriate for mandamus . . . even though on normal appeal a reviewing court might find reversible error. Id.

It is, therefore, important and appropriate for this Court, in deciding whether to exercise its power to issue extraordinary writs, not only to heed the general admonition given by the United States Supreme Court and other appellate courts with respect to writ applications, but also to formulate such necessary guiding and limiting objective principles in order not to abuse the use of such extraordinary power. See generally La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed. 2d 290 (1957); and Bauman v. United States District Court, 557 F.2d 650, 653 (9th Cir., 1977). There are dangers to an unprincipled use of peremptory writs, as for example, the possibility that its use would be an impermissible alternative to the normal appellate process. Its abuse could operate to undermine the mutual respect generally existing between trial and appellate courts. Further, appellate courts should insure against the temptation to grant such writs merely because they might be sympathetic to the petitioner's underlying actions. See Bauman, at 653-654.

8

In reviewing the historical uses of peremptory writs, <u>Bauman</u> collected from the various federal cases decided over the years, five specific guidelines which reviewing courts should look to in reviewing applications for peremptory writs. <u>Id.</u>, at 654-661. It prefaced such guidelines with the general admonitory language found in <u>Wills v. United States</u>, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed. 2d 305 (1967), that the remedy of mandamus is a drastic one, to be involved only in extraordinary situations; that it should be used only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so; and that only exceptional circumstances amounting to a judicial "usurpation of power" will justify the invocation of this extraordinary remedy. <u>Wills</u>, 389 U.S. at 95, 88 S.Ct. at 273.

We find, in addition to the general admonition found in <u>Wills</u>, <u>supra</u>, that the five guidelines noted in <u>Bauman</u>, at 654-655, are not only instructive in addressing the present petition, but also that we should apply such guidelines in reviewing the petition.

The five guidelines are as follows. First, the party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief desired. See <u>Kerr v. United States District Court</u>, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed. 2d 725 (1976). Second, the petitioner will be damaged or prejudiced in a way not correctable on appeal. See <u>Arthur Young & Co. v. United States District Court</u>, 549 F.2d 686, 691-692 (9th Cir. 1977). The third is that the lower court's order is clearly erroneous as a matter

9

of law. _Arthur Young & Co._, _supra_, at 691-692. The fourth is that the lower court's order is an oft-repeated error, or manifests a persistent disregard of applicable rules. See _LaBuy v. United States_, _supra_, 352 U.S., at 255-260, 77 S.Ct. 309. Fifth, the lower court's order raises new and important problems, or issues of law of first impression. See _Schlagenhauf v. Holder_, 379 U.S. 104, 111, 85 S.Ct. 234, 13 L.Ed. 2d 152 (1964).

In applying the above guidelines to a particular case, not always will there be a bright-line distinction; and the guidelines themselves often raise questions of degree as, for example, how clear is it that a lower court's order is wrong as a matter of law, or how severe a damage will petitioners suffer if extraordinary relief is withheld. _Bauman_, at 655. The considerations are cumulative, and proper disposition will often require a balancing of conflicting indicators. _Id._

In the case we are confronted with, plaintiffs' First Amended Complaint alleged four (4) causes of action. The first cause of action is the alleged failure of the Attorney General to allow certain individuals, prior to certification, to withdraw their signatures since they were fraudulently induced to sign the initiative petition.

The second cause of action is that the Attorney General violated his constitutional duty in certifying the initiative petition which was allegedly signed by less than the minimum numerical requirement of the Commonwealth Constitution.

The third cause of action alleges that the Attorney General's certification of the initiative petition had caused or will cause

10

the processing of the initiative ballots and also the eventual tabulation of the initiative ballots which would irreparably injure the plaintiffs.

The fourth and final cause of action sought a declaration by the lower court that Section 2-101 of the Board of Elections Emergency Regulations Governing the Certification of Signatures For Proposed Constitutional Amendments by Popular Initiative is unconstitutional "to the extent it allows an Attorney General to certify that a petition contains signatures of at least 50 percent of the qualified voters when in fact the [initiative] petition does not satisfy the constitutional minimum percentage." First Amended Complaint, pp. 22-23.

The basic thrust of the First Amended Complaint, therefore, is that the Attorney General, in certifying the petition as re-submitted by the circulators pursuant to the Emergency Regulations, committed an error, in violation of Article XVIII, Section 4(a) of the Constitution which requires a popular initiative petition for amending the Constitution to be signed by at least fifty percent of the persons qualified to vote in the Commonwealth and at least twenty-five percent of the persons qualified to vote in each senatorial district.[5]

_____

[5] The allegation, put differently, is that the Attorney General certified the initiative petition which allegedly was signed by less than fifty percent of the persons qualified to vote in the Commonwealth because a number of the signatures were procured by, among others, forgery, fraudulent inducement, etc. which would render the petition, after judicial review, to have less than the constitutional minimum. Thus, the certification allegedly violates the Constitution.

11

On the one hand the Attorney General has the constitutional duty to certify (or not) an initiative petition before submission to the voters. On the other hand, the Board of Elections and the Attorney General, pursuant to the Emergency Regulations promulgated, were to follow certain basic procedures to effectuate the constitutional certification mandate. We see no apparent conflict between the procedures required by the Emergency Regulations and the constitutional certification requirement. The regulations, in fact, complement the Constitution by putting in place a procedure to govern popular initiatives.

With this backdrop then, we now examine the plaintiffs' first amended complaint to determine whether the assumption of jurisdiction by the Superior Court was _clearly_ erroneous. To the extent that the Attorney General's certification of the initiative could be viewed both as a review of an agency certification action governed by the APA and as an action seeking declaratory relief vis-a-vis the constitutional requirement as to certification, the Superior Court's assumption of jurisdiction, notwithstanding the fairly persuasive argument of petitioners, is not clearly erroneous. We, therefore, deny the petition for a writ of mandamus grounded on petitioners' first contention.[6]

We find, applying the general admonition that a reviewing court should exercise its peremptory writ powers only in excep-

_____

[6] In a normal appeal, it is still possible that a reviewing court might find reversible error. As we noted earlier, no regular appeal has been filed on this matter which in effect precludes us from _sua sponte_ reviewing in depth the question of jurisdictional error.

12

tional circumstances, that the Superior Court's assumption of jurisdiction did not amount to a "usurpation of power" so as to justify the invocation of an extraordinary remedy. This factor alone, is substantially persuasive in itself to require us to deny the petition based on the asserted lack of jurisdiction. There is no need to address the other four (4) specific guidelines.

We next turn to the second ground raised in support of the petition for issuance of a writ of mandamus. Stated differently, the petitioners contend that the Superior Court exceeded its scope of judicial review permitted by section 9112(f)(2) of the Commonwealth Administrative Procedure Act when it decided that the fifty percent minimum required number of qualified voter signatures should be based on the total number of qualified voters on August 21, 1989. This ruling involves an issue of law and is reviewable de novo. In order to review the petitioners' second contention, we need to examine with more detail where and how such ruling exceeded the lower court's limited scope of judicial review.

1 CMC § 9112(f) requires a reviewing court to decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of an agency action. Among its power of judicial review, the reviewing court could (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be:

 (A) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

 (B) Contrary to constitutional right, power,

13

privilege, or immunity;

 (C) In excess of statutory jurisdiction, authority or limitations, or short of statutory right;

 (D) Without observance of procedures required by law.

 (E) Unsupported by substantial evidence . . .; or,

 (F) Unwarranted by the facts to the extent the facts are subject to trial de novo by the reviewing court.

As we have earlier noted, the Emergency Regulations were promulgated by the Board of Elections (sometimes hereafter referred to as "BOE") to govern the timely submission and certification of the initiative petition and signatures for proposed constitutional amendments by popular initiative. BOE promulgated these regulations pursuant to its statutory power to issue regulations. 1 CMC § 6104(f). Its stated intent was "to establish procedures and guidelines by which the Attorney General shall certify that the requirements of Article XVIII, Section 4(a), of the CNMI Constitution have been met, prior to such petition being placed on an election ballot." Emergency Regulations, section 1-101.

Section 2-101 of the Emergency Regulations provides, in part, that the "number of persons qualified to vote in the CNMI, for purposes only of determining the percentage of voters who must sign an initiative petition, shall be determined by the Board of Elections as of 4:30 p.m. on the date that is 120 days prior to the next general election."[7]

---

[7] The "next" general election was scheduled for November 4, 1989. There is no issue raised that the 120th day prior to such election date is July 7, 1987.

14

Section 3-101 of the Emergency Regulations provides, in part, that the "petition and the required number of signatures shall be submitted . . . no later than 4:30 p.m. on the date that is 100 days prior to the next regular general election."[8]

The circulators of the petition submitted on July 27, 1989, the petition for the proposed initiative and the accompanying signatures for review and certification by the Attorney General pursuant to the regulations. After reviewing such submission, the Attorney General, on August 16, 1989, notified the circulators of the petition that the minimum requirement of 50 percent had not been met. He, therefore, pursuant to section 3-105 of the Emergency Regulations, allowed the circulators an additional five days to meet the minimum requirements. On August 21, 1989, the circulators provided to the Attorney General additional signatures in support of the petition. On August 23, 1989, the Attorney General certified to the Board of Elections that the initiative petition satisfied the requirements of Article XVIII, section 4(a), of the Commonwealth Constitution, and that the proposed constitutional amendment should be submitted to the voters at the November 4, 1989, general election.

The allegations of the First Amended Complaint, in particular Count 4, questioned the constitutionality of section 2-101 of the Emergency Regulations, as applied by the Attorney General, the certifying officer. The plaintiffs' allegation was that such

_____

[8] There is also no dispute by the parties that the submission of the initiative petition to the Attorney General must be made on July 27th, which was the case.

15

provision allows the Attorney General to certify the initiative petition as containing signatures of at least 50 percent of the qualified voters when in fact the petition allegedly was signed by less than the required 50 percent constitutional minimum.

In order to prove the unconstitutionality of section 2-101 of the Emergency Regulations, as applied, the plaintiffs apparently sought an evidentiary type of judicial review to counter the certification. This evidentiary hearing apparently did not take place because the Superior Court ruled that section 3-105 of the Emergency Regulations constituted a "second chance" for the initiative proponents, so that to the extent that the proponents were permitted an additional five (5) days to satisfy the 50 percent minimum percentage required, they must correspondingly accept any increase in the number of qualified voters that also had increased between the July 7th regulatory cut-off date for computing the 50 percent minimum requirement and the date that the additional signatures were provided to the Attorney General by the proponents.[9]

It is settled law that courts have the power to review the constitutionality of statutes enacted by the legislature. See *Amog v. Keatley*, 2 CR 155, 161 (CTC, 1985), aff'd 2 CR 751 (D.C. App.Div., 1986), and see generally, 20 Am.Jur. 2d, *Courts*,

---

[9] The third paragraph, at page three, of the Superior Court Order of October 19, 1989, alluded that July 7th was the date for submission of the initiative petition. This statement by the Superior Court appears to be in error since the parties do not dispute that the required date for submission by the circulators was July 27th, which is 100 days prior to the November 4,1989, general election. See section 3-101 of the Emergency Regulations.

16

§§ 64-66; or regulations promulgated by government agencies. Califano v. Sanchez, 430 U.S. 99, 97 S.Ct. 980 (1977). See generally, 2 Am.Jur. 2d, Administrative Law, § 650. It is also true that there exists a rebuttable presumption in favor of the validity of a statute or regulation, unless a clear constitutional violation is shown. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466 (1936), concurring op., reh den 297 U.S. 728, 56 S.Ct. 588. See, also, Antieau, Modern Constitutional Law, Vol. 2, § 15.33 (1969); and 16 Am.Jur. 2d, Constitutional Law, §§ 220-225; and 2 Am.Jur. 2d, Administrative Law, § 650.

In this case, the Superior Court itself noted that, while Article XVIII, Section 4(a) of the Constitution requires a petition to be signed by at least 50 percent of the persons qualified to vote in the Commonwealth, "[t]here is no guidance given as to when that percentage is computed." See, Superior Court Order of October 19, 1989, at page 1.

Taking that finding a step further, we also find no guidance on this point in the Analysis of the Constitution. And neither is there any legislative enactment to fill the void or clarify the ambiguity.

The question thus becomes whether the Board of Elections or the Attorney General, or both, through the promulgation of the Emergency Regulations had the authority to determine a reasonable cut-off date to use as a basis, and further, whether the Board of Elections and the Attorney General could allow a reasonable extension to that cut-off date, so as to accomplish substantially (if not fully) the intent of the Constitutional provision at

17

issue.

The Superior Court decided that Section 2-101 (the 120th day cut-off date) and Section 3-105 (permitting the circulators a five-day extension to comply with the required number of signatures using the cut-off date figure), together, are unconstitutional because any increase in the number of qualified voters between the cut-off date and the date of (final) submission requires a correspondingly proportional increase in the number of initiatives signers. We find this ruling to be clearly erroneous.

For example, it is not unusual that a jurisdiction use, as a basis for computing the minimum required percentage to place an initiative before the voters, the immediately preceding general election's total number of registered voters. See generally, 42 Am.Jur. 2d, Initiative and Referendum, § 28. In fact, the First Constitutional Convention committee, which drafted Article XVIII and proposed it to the Convention, recommended the use of the last regular general election. See, "Report to the Convention, Committee on Finance, Local Government And Other Matters," dated October 22, 1976.

In the case before us, the Superior Court's ruling, without expressly saying so, not only effectively nullified sections 2-101 and 3-105 which was intended to provide a reasonable basis to fill the gap (or ambiguity) not clearly addressed by the Constitution, but the order in effect replaced these provisions with what the Superior Court felt was a better regulation. This, the Superior Court clearly could not do. It could not substitute its judgment for that of the agencies delegated by the legislature (the Board

18

of Elections) and by the Constitution (the Attorney General) to legislate the matter.[10/] See, <u>Federal Security Administrator v. Quaker Oats Co.</u>, 318 U.S. 218, 63 S.Ct. 589 (1943); 1 Davis, <u>Administrative Law Treatise</u>, § 5.03; and see generally, 20 Am.Jur. 2d, <u>Courts</u>, §§ 64-65. Such attempted substitution is an impermissible intrusion into executive branch agencies' delegated rule-making authority.

In addition, the substitute is unworkable because in order for the proponents of an initiative to determine, at any given date, an accurate basis for determining compliance with the minimum required number of signatures, they would have to, up to the final day of submission, be constantly checking the offices of the Board of Elections to determine whether voter registrations have also continuously been increasing.

It is also unfair because it would be like trying to paint a moving train. The figures constantly keep changing as voter registration continues.[11/]

There is nothing inherently or expressly unconstitutional with the requirements of Sections 2-101 or 3-105.

---

[10/] It is undisputed that both the Board of Elections and the Attorney General collaborated in the drafting of the Emergency Regulations.

[11/] We realize that a counter-argument could be made that the initiative proponents should aim to obtain a greater number of signatures than the minimum percentage required so as to offset any subsequent increase in registered voters. Such argument, however, should not detract from the clear necessity of having a set of rules by which the initiative process should be carried out. The "rules of the game" should be clear at the start.

We now reach the final question of whether a writ should issue based on the lower court error just addressed, i.e. whether, it is necessary, appropriate, and wise that a writ issue based on the facts and circumstances of this case. In order to do this, we need to turn again to the guidelines enunciated in Bauman.

First, we find that, because of the extremely short length of time (eight days) from the filing of the petition for writ to election day, the petitioners have no adequate means such as through direct appeal, to attain the relief they seek. See, Antieau, The Practice of Extraordinary Remedies, Vol. 1, § 2.06 (1987).

Second, if the error asserted is not corrected by way of writ, petitioners will in fact be injured in a way not correctable on appeal because the order at issue effectively enjoined the initiative from being placed on the November 4th general election ballot. See also, Antieau, The Practice of Extraordinary Remedies, supra.

Third, the court's ruling as to sections 2-101 and 3-105 of the Emergency Regulations was clearly erroneous as a matter of law.

Fourth, we find that the lower court's order raised new and important constitutional issues of first impression in the Commonwealth.[12]

---

[12] We expressly do not find the order at issue in this case to be one involving an oft-repeated error. Neither does the order manifest a persistent disregard of applicable rules.

In weighing the facts of this case against the guidelines for issuance of peremptory writs, sound judicial discretion dictates strongly in favor of granting the petition.

Accordingly, the petition for a writ of mandamus be and the same is GRANTED.

Entered this ___14th___ day of November, 1989, at Saipan, Northern Mariana Islands.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice